(91 App. Div. 230.)

ROSSEAU v. ROUSS.

(Supreme Court, Appellate Division, First Department. February 11, 1904.)

1. PLEADINGS—AMENDMENT—CHANGE OF CAUSE OF ACTION.

Under Code Civ. Proc. § 723, providing for the amendment of pleadings which do not change substantially the claim or defense, an amendment of a complaint on a contract whereby the putative father of an illegitimate child promised to settle on him a sum of money, in consideration of a promise by his mother "to care for and provide for the support and maintenance of said child until" a certain date, by inserting the words "as he may direct" before the word "until," merely amplified the allegations as to consideration, and did not change the cause of action.

2. ILLEGITIMATE CHILDREN—CONTRACT BY FATHER FOR SUPPORT—CONSIDERATION.

An agreement of the mother of an illegitimate child to "care for and support" him until a certain date is sufficient to support a promise of the putative father to settle a sum of money on the child on that date, as the mother's legal duty is only to "support" the child until he becomes self-supporting, and in case she is able to do so.

3. WITNESSES—COMPETENCY—ACTIONS AGAINST EXECUTORS—PERSONS INTERESTED IN EVENT.

The mother of an illegitimate child is not a "party interested in the event" of an action brought by the child against the executor of his putative father on a contract whereby the father agreed to settle a sum of money on the child in consideration of support by the mother until a certain date, within Code Civ. Proc. § 829, rendering such persons incompetent as witnesses to transactions with decedents in actions against executors or administrators.

4. SAME.

The fact that plaintiff's mother employed an attorney for plaintiff does not render her a "party interested in the event" of an action against an executor, and hence incompetent to testify to transactions with deceased, under Code Civ. Proc. § 829.

5. SAME.

One who files security for costs for a minor, which is suspended by the filing of a subsequent bond for costs by the guardian ad litem, is, after that time, not "interested in the event" of the action, and hence is not incompetent to testify as to transactions with defendant's decedent, under Code Civ. Proc. § 829.

Ingraham, J., dissenting.

Appeal from Trial Term, New York County.

Action by Charles B. Rosseau, an infant, etc., against Peter W. Rouss, as executor of Charles Broadway Rouss, deceased. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Austen G. Fox, for appellant.
Charles A. Decker, for respondent.

PATTERSON, J. This is an appeal from a judgment entered upon a verdict for the plaintiff and from an order denying a motion for a new trial. The action is founded upon a contract alleged to have been made by Charles Broadway Rouss, the defendant's testator, with Eva S. F. Rosseau, the mother of an illegitimate child, the in-

fant plaintiff herein. The substantial averments of the amended complaint are, after referring to the infancy of the plaintiff and the appointment of his guardian ad litem, that the defendant's testator, Charles Broadway Rouss, was the father of the infant plaintiff; that at various times named, at the city of New York, the said Charles Broadway Rouss made, entered into, and reaffirmed a contract with Eva S. F. Rosseau, the mother of the child, wherein and whereby, in consideration of the promise of the said Eva S. F. Rosseau to care for and to provide for the maintenance of the said Charles B. Rosseau, as he should direct, until the 4th day of June, 1902, said Charles Broadway Rouss promised and agreed to pay to and settle upon the said Charles B. Rosseau on the 4th day of June, 1902, the sum of $100,000, for the benefit, support, and maintenance of the said Charles B. Rosseau; that the plaintiff performed the conditions of the contract to be performed by her; that Charles Broadway Rouss died on the 3d of March, 1902, leaving a last will and testament, which was duly proven, and letters testamentary were issued upon such will, the defendant being the executor thereof; that a claim was duly presented to the executor, and was rejected by him on the ground that such claim was not just or due, and the allegations and proof thereof had no foundation in fact. The answer contains denials of the substantial allegations of the complaint relating to the making of the contract and the paternity of the child. It sets up affirmatively that, if Charles Broadway Rouss had made or entered into a contract or agreement with Eva S. F. Rosseau as alleged in the complaint, the promise or agreement so made was obtained under false and fraudulent representations made by Eva S. F. Rosseau as to Charles Broadway Rouss being the father of the child.

As to this affirmative defense, it is sufficient to say that there is nothing whatever in the evidence to sustain the allegation of false or fraudulent representations. When the cause came on for trial, and before any proof was taken, a motion was made by the defendant to dismiss the complaint, on the ground, among other things, that no consideration was stated for the agreement alleged therein. The motion was denied, and thereupon the plaintiff moved to amend the complaint in connection with the allegation respecting the consideration of the contract. It was charged in the complaint that that contract was made "in consideration of the promise of the said Eva S. F. Rosseau to care for and provide for the support and maintenance of the said Charles B. Rosseau until the 4th day of June, 1902." In that connection, as amended, the allegation of the complaint as to consideration reads:

"That Charles Broadway Rouss made, entered into, and reaffirmed the contract with the said Eva S. F. Rosseau, wherein and whereby, in consideration of the promise of the said Eva S. F. Rosseau to care for and provide for the support and maintenance of the said Charles B. Rosseau, as he should direct, until the 4th day of June, 1902, the said Charles Broadway Rouss promised and agreed to pay to and settle upon the said Charles B. Rosseau the sum of $100,000 on the 4th day of June, 1902, for the benefit, support, and maintenance of the said Charles B. Rosseau."

The defendant excepted to the allowance of the amendment, but did not urge surprise.

The power of the court to amend a pleading at the trial is regulated by section 723 of the Code of Civil Procedure, which enacts that "the court may, upon the trial, or at any other stage of the action, before or after judgment, in furtherance of justice, and on such terms as it deems just, amend any process, pleading, or other proceeding, by adding or striking out the name of a person as a party, or by correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting an allegation material to the case; or, where the amendment does not change substantially the claim or defence, by conforming the pleading or other proceedings to the facts proved." Referring to that section, it is said in Martin v. Home Bank, 160 N. Y. 197, 54 N. E. 719, that "the court has power at the trial to amend a pleading by inserting an allegation material to the case, or where the amendment does not change substantially the claim or defense by conforming the pleading to the facts proved. This power may be exercised by the court, at the trial, in furtherance of justice, and the statute which confers it has always received in this court a liberal rather than a narrow construction." Where a proposed amendment radically changes a cause of action, it will not be allowed at the trial, but here that result does not follow. The cause of action was still the same, namely, one based upon an alleged contract made by the putative father of a child to furnish, at a certain time, in consideration of the care and support of that child by its mother, a sum of money for the child. The words introduced in the complaint are simply in amplification of that consideration. There remained the same promise; the same obligation reposed on the promisee; the manner in which that obligation was to be performed only being added. Such an amplification of an allegation cannot be regarded as introducing into a complaint a new or different cause of action. It is suggested that it has that effect because, as first pleaded, there was an insufficient consideration set forth; that nothing was then alleged which cast upon the mother any other duty or obligation than that which by the common law rested upon her; that the additional words imposed upon her a further obligation, namely, that of supporting and maintaining the child, according to the wishes of the promisor. The common-law relation of a mother to an illegitimate child is stated by Chancellor Kent in a few words (2 Kent's Comm. 178):

"She has the right to the custody and control of such child as against the putative father, and is bound to maintain it as its natural guardian; though, perhaps, the putative father may assert a right to the child as against a stranger."

But notwithstanding this common-law obligation of the mother, the putative father may contract for the support of the child, and particularly where he has recognized the child as his own and virtually adopted it. The natural obligation arising out of his relation to the child is a sufficient consideration for a contract on his part to pay for its support and maintenance. Todd v. Weber, 95 N. Y. 181, 47 Am. Rep. 20. In the case cited, the general rules of law applicable to the subject are considered in the opinion of the court by Danforth, J. "There is nothing illegal in an undertaking by a putative father to support his illegitimate child, or to pay a sum of money

in consideration of such support being furnished by another, though it be to the mother of the child." Hook v. Pratt, 78 N. Y. 376, 34 Am. Rep. 539. If such is the consideration of the obligation, and it is furnished by the mother, she is at liberty to take it payable to herself in her own right or for the benefit of her child. In Buchanan v. Tilden, 158 N. Y. 121, 52 N. E. 724, 44 L. R. A. 170, 70 Am. St. Rep. 454, Todd v. Weber is referred to as holding that the relation of parent and child, even between a father and his illegitimate daughter, is a sufficient consideration for a contract made by him with the relatives of that child to pay for her support and maintenance, and that she, the child, can enforce it by action. As we have seen in Hook v. Pratt, supra, the same right accrues even where the contract is made with the mother. In Hicks v. Gregory, 8 Mann. Gran. & S. 379, the Court of Common Pleas in England sustained a judgment in an action in assumpsit brought by the mother of an illegitimate child upon a promise made by the reputed father to allow her £100 a year during the life of the mother and the life of the child, to be paid quarterly, for the proper bringing up of the child; and it was held that the letter disclosed a sufficient consideration for the promise to pay the annuity, viz., the mother properly bringing up the child.

A contract made by the putative father, therefore, whether with strangers or with the mother of an illegitimate child, has been recognized as one based upon a sufficient consideration, where the duty of supporting and caring for the child is assumed by the promisee at the request of the promisor; for what the mother assumes and undertakes to do is something more than to furnish that support which she is obliged to give to the child under her legal obligation. That obligation only extends to the support of the child until it becomes self-supporting, and in case the mother has the means with which to maintain the child. Without such means, she could invoke the compulsory process of the law to coerce the father to support the child. Under the contract set forth here with the father, the mother was bound to something more than mere support. She was bound to care for the child, which involves a greater obligation than that which is associated with mere support and maintenance, viz., furnishing it with food and raiment and shelter. Her personal care of the child is required by the contract, and that relieved the father under any and all circumstances from the burden at any time of either caring for or otherwise providing for his illegitimate offspring. We think a good consideration for the contract is made to appear, whether regard is had to the allegation of the complaint as it was originally made, or to the consideration as set forth in the amended complaint.

The material facts of the case are abundantly proven. The infant plaintiff was acknowledged, from the day of his birth, by Charles Broadway Rouss as his son; and as long as the father lived he exhibited great affection for the child, and evinced the intent of providing for him with liberality. So far as it could be done, without complying with technical formalities, he virtually adopted the child. He recognized to the fullest extent his obligation to care for him, and he frequently referred to him as the son of a rich man, and made

ample contribution for the education, the comfort, and the welfare of the son.  He enjoyed his companionship, had him with him frequently, and was reluctant to part with him, even for short periods of summer vacation, and bestowed upon him the tenderness of a father for a beloved child.  The making of the contract was also fully proven.  Several witnesses testified to it generally.  The mother's testimony is very specific, but it was objected that she was not a competent witness, because she was interested in the event of the action, and that she was prohibited from testifying by the provisions of section 829 of the Code of Civil Procedure.  The objection was overruled, and an exception was duly taken.  It is claimed that it was error to permit the mother to testify, for two reasons:  First, because she was liable for the support and maintenance of the plaintiff, and the result of the action would be to relieve her of that obligation and transfer it to the estate of Charles Broadway Rouss; and, second, that she was interested in the event, because she employed an attorney to prosecute the action, and is liable for the costs, and that she furnished security for costs of the action in the sum of $250, which was deposited with the clerk of the court as such security.  We think neither of these grounds of objection is tenable.  The mother was not a person interested in the event of the suit within the meaning of section 829 of the Code.  In Connelly v. O'Connor, 117 N. Y. 93, 22 N. E. 753, the court says:

"In construing that section it has been held that the test of interest, where the witness is not a party, is that the witness will either gain or lose by the direct legal operation of the judgment, or that the record will be legal evidence for or against him in some other action.  It must be a present, certain, and vested interest, and not an interest uncertain, remote, or contingent." Citing Hobart v. Hobart, 62 N. Y. 81; Wallace v. Straus, 113 N. Y. 238, 21 N. E. 66.

Connelly v. O'Connor was an action upon an alleged agreement of the defendant's intestate to pay plaintiff for the support of the intestate's illegitimate child, and the mother of the child, who was not a party to the action, was called as a witness for the plaintiff to prove the contract with the intestate, and it was held that she was not a party or person interested in the event of the action, within the meaning of section 829 of the Code.  See, also, Healy v. Healy, 55 App. Div. 315, 66 N. Y. Supp. 927, affirmed 166 N. Y. 624, 60 N. E. 1112; Eisenlord v. Clum, 126 N. Y. 552, 27 N. E. 1024, 12 L. R. A. 836.

The contract sued upon by the infant plaintiff here is not one in any respect made for the benefit of the mother, and it is not at all clear that she is relieved by it from her obligation to support the child until he becomes self-supporting.  But however that may be, it is within the class of contracts recognized as enforceable in the cases to which reference has been made.  Nor do we think that at the time of the trial, when the mother was allowed to testify, she stood to the litigation in any such attitude as would render her incompetent as a witness.  The mere fact that she employed an attorney to prosecute the claim of her son does not disqualify her, and we have nothing more than the naked fact that at one time she did employ an attorney to care for the interest of her child.  Nor do we think that, under the proofs as they

are made in this record, the mother was disqualified as a witness by reason of having furnished the money to be deposited as security for costs. It appears that an undertaking for costs was also furnished. It is stated in the record that "the appointment of J. Arthur Fisher as guardian ad litem of the infant plaintiff, and that he filed a bond, is admitted by the counsel for the defendant." This refers undoubtedly to a bond for costs. It does not appear when that bond was given, but it must have been before the case was brought to trial. The effect of filing the bond, if it were filed after the deposit was made, was to render the witness competent, if she were disqualified before that time. At all events, the testimony with reference to this deposit is so vague and unsatisfactory that we cannot tell what its exact condition was, and we are unable to draw any other inference than that if a deposit were made it was superseded by the filing of a bond.

We have examined the exceptions taken during the course of the trial, and we do not find that any of them require particular consideration. That principally insisted upon is that the court erred in charging "that the adequacy of the consideration was for the parties to consider at the time of making the agreement, not for the court when it is sought to be enforced." The word "adequacy," as used here, evidently does not refer to the legal sufficiency of the consideration, but to the inducements which operated upon the minds of the parties in making the contract. The legal sufficiency of the consideration was not submitted to the jury by this request.

The judgment and order appealed from should be affirmed, with costs.

VAN BRUNT, P. J., and HATCH and LAUGHLIN, JJ., concur.

INGRAHAM, J. (dissenting). I do not think that the proof disclosed a consideration to support the alleged promise made by the defendant's testator to pay to the plaintiff the sum of $100,000 upon his tenth birthday. It is true that courts have gone very far in spelling out a consideration to support a promise made by the father of an illegitimate child for the benefit of the child, but, notwithstanding the moral obligation that exists, a contract to pay money to an illegitimate child must be based upon a sufficient consideration, and, so long as a consideration is required, it must be established before such a promise can be enforced. The evidence as to the agreement is the testimony of the plaintiff's mother. She testified that her relations with the defendant's testator commenced in May, 1891; that the plaintiff was born on June 5, 1892, and the agreement sought to be enforced was made in the latter part of May or the first part of June, 1891; during this period, and down to the time of his death, that the defendant's testator supported the witness and her son; that the defendant's testator commenced paying her $10 a day, or $70 a week, after the plaintiff's expenses commenced to increase in 1896; that the amount was paid in weekly payments. "It was $70 a week, and he continued to pay that amount up to the time of his death. The money was paid for the benefit of the boy. For his support and care, and my expenses also." She further testified that in the latter part of May, or the first

of June, she had a conversation with the defendant's testator, at which she told him that she intended to leave the city and take her boy with her; that she preferred going where the surroundings would be more palpably moral; that to that the defendant's testator objected most seriously. He said:

"You shall not take Charley away. You may go if you wish, but I don't want him to go. But you must keep my boy right here in this city. You must rear him as my son. * * * Remember that, if you do so, I will settle upon Charley, when he is ten, the sum of $100,000. It is nothing—I am a rich man; my children will have plenty. I don't mind that little amount of money. I will give it to Charley for his support, but he must be reared as my son. He must have the best that the money that I now give provides. I want him to have the best raising; I want him to be raised a Christian gentleman."

To this the witness said:

"I don't want to stay here; I am tired of it. I am tired, but if it is best for my boy, and if you will give him $100,000, as you say, I submit to your view; but I don't want, yet I will for his sake."

The witness also testified that the defendant's testator repeated this to her several times at subsequent periods, but it is a compliance on her behalf with this request that furnishes what is called the consideration for the promise to pay the $100,000. At this time the boy was nearly 9 years old, and the defendant's testator died before the boy became 10 years of age. The witness does not testify that she had any money or property of her own, or that she ever expended one dollar of her own money in the support of this child, or in keeping him here in accordance with this request of the testator; but that, on the contrary, she received her support and the support of the child from the testator during the period that they remained here after this promise was made. Assuming, as we must, that the defendant's testator made this promise, as the jury have so found, the essentials of the consideration necessary to support such a promise are absent. The relations between the witness and the testator ceased some time before this promise was made, and, according to her testimony, were not resumed prior to his death, and I think more is required to sustain such a promise than a mere acquiescence in a request that the plaintiff's mother should keep the child in New York for a year, when, during that time, he supported not only the child, but the mother, and paid, so far as appears, all the expenses that were incurred for that purpose.

I think the judgment should be reversed.