### CONLON v. HEARN.

(Supreme Court, Appellate Division, First Department. June 10, 1904.)

1. BASTARDS—CONTRACT TO SUPPORT—RELEASE.

Defendant, after having agreed to support plaintiff's illegitimate child, of which he was charged with being the father, entered into negotiations with plaintiff for a release, which she agreed to give on defendant's payment of $1,000. This agreement, however, she refused to complete, and placed the matter in the hands of an attorney, who agreed with defendant's attorney, after renewed negotiations, to accept $1,500 in full con-

sideration for a release of her claim against defendant. This amount was paid to plaintiff, and she executed a full release, with knowledge that she was thereby releasing all claim against defendant. *Held*, that such release was a complete defense of the defendant's liability on his agreement to support.

Appeal from Trial Term, New York County.

Action by Margaret Conlon against Arthur H. Hearn. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before McLAUGHLIN, PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

B. Traver, for appellant.
J. Delahunty, for respondent.

PATTERSON, J. The plaintiff appeals from a judgment entered against her upon the dismissal of her complaint at the trial of the cause. She sued upon a contract which she alleges was made between herself and the defendant, she asserting that he is the father of her illegitimate child, and she claims that he agreed to pay her a certain sum of money per week for bringing up and caring for the child during its minority, and that he has failed to comply with his agreement. The answer denies the substantial allegations of the complaint, and then sets up as an affirmative defense that before the commencement of the action, and after the cause of action had accrued (if any ever did accrue), the plaintiff executed and delivered, for a valuable consideration, a release of the defendant of and from all claims in her favor against him. On the trial such a release was given in evidence, and the plaintiff sought to impeach it on the ground that it was executed and delivered by her under a mistake as to its purport and effect, and also on the ground of fraud on the part of the defendant or his agent or representative. The evidence was insufficient to sustain the attack made on the release. It is immaterial now whether the trial judge should have directed a verdict for the defendant or pursued the course he took in dismissing the complaint. We need not, in the present case, inquire into the nature and enforceability of such a contract as that set up in the complaint in this action, or say anything further on that subject than was said in the case of Rosseau v. Rouss, 91 App. Div. 230, 86 N. Y. Supp. 497. Here it will be observed that the contract counted upon was one made with the plaintiff, and that no one could take advantage of it but herself. She admits that the defendant performed it according to its terms for some years, and that a proposition was made to her, at a time and under circumstances when she was quite willing to entertain it, to commute the payments that were to be made from time to time, by the defendant giving a gross sum in extinguishment of all his liability under it. It is needless to go over all the evidence relating to the circumstances and surroundings under which the new arrangement was made. It will suffice to refer to them generally. The plaintiff was living in Philadelphia, and became engaged to be married to a person there, and the defendant's attorney went to that city, and offered the plaintiff the sum of $1,000 for a release, paying

to her a portion of that sum, and also taking a release, but at the same time telling her to consult her friends, and not to consider herself bound by the engagement, and that he would retain the release, and not make use of it, if, within a certain time, she expressed a desire to retire from the transaction and rescind it. She did express such a desire, and subsequently stated that she was not satisfied, and placed the matter in the hands of attorneys in the city of New York, one of whom she refers to as her cousin by marriage. The transaction had in Philadelphia was regarded on both sides as abandoned. Renewed negotiations were entered into, the plaintiff being represented by her lawyer and the defendant by his counsel, and the dealings seem to have been at arm's length. Those renewed negotiations resulted in the plaintiff's agreement to accept the sum of $1,500 as full consideration for a release of her claim against the defendant. She did receive the sum of $1,500, and gave the release relied upon by the defendant. When the $1,500 was paid and the release given, there was no mistake of fact whatever on the part of the plaintiff. She knew the contents of the release, knew it applied to her claim, and the whole of her claim. She received the precise sum she stipulated for. She had no personal negotiations with the defendant or with his attorney with respect to the $1,500, except that she may have been present when her attorney was attending to the matter. She received all she expected, all she required or demanded, and all she stipulated for, and gave the release for that ample and satisfactory consideration.

On the trial of the cause, a check of the defendant for $1,500, payable to the plaintiff, was introduced in evidence, and the plaintiff testified that that check was cashed; that she retained $1,300, and paid to her lawyer the sum of $200. That completed the whole transaction, so far as she knew at that time. But the defendant's counsel produced another check for $1,000, payable to the order of the plaintiff's attorneys, and it seems that it was suggested that this check was used on the occasion of the settlement and release of the plaintiff's claim. There is nothing in the record to show any direct connection of this check with that settlement, so far as the plaintiff is concerned. It is argued, however, that some vague and unindicated fraud may have been perpetrated upon the plaintiff by the use of this check, but there is nothing to connect the defendant with any such fraud, and the direct testimony is that the defendant's attorney negotiated and concluded his negotiations upon the basis of the plaintiff getting $1,500, a sum entirely satisfactory to her, and no other sum was ever alluded to, so far as the record shows, as a consideration for a release. That the plaintiff's attorneys required the payment by the defendant of their fee as well as payment of the amount agreed upon for the plaintiff, is a mere matter of conjecture. If they did, that would not constitute a fraud upon the plaintiff with which the defendant is to be charged. He and his attorney were entitled to negotiate with the plaintiff's attorneys with the full understanding that what those attorneys did was authorized by their client. If a fraud has been perpetrated at all, the defendant is not in complicity with it, so far as the record shows; and, without considering

the particular way in which the action was disposed of, we think the release was a complete bar to the plaintiff's cause of action under all the facts disclosed.

The judgment should be affirmed, with costs.   All concur.