ANN FARMER, as Administratrix, etc., of HENRY FITZ-SIMMONS, Deceased, Plaintiff, *v.* THE MANHATTAN SAVINGS INSTITUTION, Defendant.

*Savings bank — payment of a depositor's money in apparent violation of its rules — not protected by a collusive judgment — the question of negligence is one for the jury.*

Among the rules of a savings bank in the State of New York, to which one Fitzsimmons, a depositor, had assented, were the following : " The officers and clerks will endeavor to prevent frauds on depositors, but all payments made to any person producing the proper deposit pass-book, shall be good and valid payments ; " and also the further rule, that " On the decease of any depositor the amount standing to the credit of the deceased shall be paid to his or her legal representatives."

The depositor died in 1874 in Pennsylvania, of whose death the bank was informed, and one Carew was there appointed his administrator, and was subsequently, in 1877, discharged.

Several unsuccessful attempts were thereafter made by one Devlin, who had got possession of the pass-book, to obtain the money from the bank ; and, in 1888, Devlin commenced an action against the defendant to recover the deposit. A referee was agreed upon in the action, whose office was in the same building with that of the attorney for the defendant; the plaintiff's attorney prepared the defendant's answer and the referee's report, and paid all the expenses of obtaining the judgment, but taxed no costs against the defendant. The judgment in that action was that the defendant pay the money to Devlin.

In an action brought against the savings bank, by an administrator of the goods, etc., of the depositor Fitzsimmons, subsequently appointed in the State of New York, to recover such deposit :

*Held,* that the judgment was apparently collusive and did not, in view of the second rule of the bank, above stated, protect the bank in its payment.

That there having been a devolution of title by operation of law, and said rule of the bank providing in such case for a payment to the legal representatives of the depositor only, the question should have been submitted to the jury whether, upon all the facts, the bank had not been negligent in making the payment to Devlin.

Exceptions of the plaintiff, Ann Farmer, as administratrix of Henry Fitzsimmons, deceased, taken upon a trial at the New York Circuit, before the court and a jury, at which her complaint was dismissed, whereupon the court, by an order made on the 23d day of March, 1891, directed said exceptions to be heard in the first instance at General Term, and that judgment be in the meantime suspended.

*Abram Kling,* for the plaintiff.

*Ira D. Warren,* for the defendant.

Van Brunt, P. J.:

On the 12th day of February, 1862, one Henry Fitzsimmons, a Catholic priest, a resident of Wilkesbarre, Pa., opened an account with the defendant. When he opened this account he signed his name to the signature-book, containing the rules and regulations of the defendant, among which were the following :

" The officers and clerks will endeavor to prevent frauds on depositors, but all payments made to any person producing the proper deposit pass-book shall be good and valid payments." And also the following :

" On the decease of any depositor the amount standing to the credit of the deceased shall be paid to his or her legal representative."

A bank-book was at the same time delivered to him containing an entry of the deposit made at the opening of the account. He continued to make deposits, which were entered in the same book up to the 31st of July, 1872. In June, 1874, he died at Wilkesbarre, and in July 1874, Francis Carew, a Catholic priest, was appointed administrator of his estate. Before the death of Fitzsimmons, Ann A. Devlin came into possession of this bank-book, and repeatedly presented the same to the defendant and demanded payment of the money, which the defendant refused. In July, 1886, the said Ann A. Devlin presented to the bank this book; her own affidavit to the effect that the book had been given to her *causa mortis ;* a certificate that Carew had been appointed administrator of Fitzsimmons' estate, and an affidavit or statement by said Carew that Ann A. Devlin was entitled to receive the money, upon the face of which statement it also appeared that on the 18th of April, 1877, the said Carew had been discharged as administrator, and again demanded payment. Thereupon, in 1888, Ann A. Devlin commenced an action against the defendant to recover this deposit. An answer was interposed and the case was referred to a referee ; and after a trial, which resulted in a judgment against the defendant for the amount of the deposit, the defendant paid this judgment to Ann A. Devlin in April, 1888, and received from

her the bank-book given to the intestate in 1862 in satisfaction of the judgment.

It further appeared that the plaintiff's attorney prepared the complaint and the defendant's answer, and that the referee, who was agreed upon, occupied offices in the same building with the attorney for defendant, and that the plaintiff's attorney prepared the decision and paid all the expenses of obtaining the judgment, and entered the same without costs against the defendant. On the fifth of October following the payment of the judgment, the plaintiff in this action took out letters of administration in this State, and commenced this action to recover the deposit from the defendant.

Upon the trial these facts appeared and the plaintiff requested to go to the jury, among other things, upon the point as to whether the defendant was negligent in paying the money to said Devlin, under all the facts presented by the testimony in the case. This request being refused and an exception taken, the court dismissed the complaint and an exception was taken thereto ; which exceptions the court directed to be heard in the first instance at the General Term.

We think that the refusal to submit this question of negligence to the jury was clearly error. The administrator having been discharged from his trust, his representations in regard to the right of Ann A. Devlin to receive this money could have no greater or other effect than the representations of a stranger in regard thereto.

Whatever might have been the position of the parties had the rule of the bank, that all payments made to any person producing the pass-book should be good and valid payments, stood alone, it is unquestionably the fact that this rule is very materially qualified by the subsequent rule which provided that, on the decease of any depositor, the amount standing to the credit of the deceased shall be paid to his legal representatives.

It may be a question worthy of consideration hereafter whether, in the case of the decease of a depositor, the prior rule does not become entirely inapplicable because of the subsequent one. The defendant knew that the depositor had died ; it had resisted the payment of this money upon the production of the bank-book, and it was not until this collusive judgment was obtained that such payment was made.

It is difficult to see upon what theory the defendant supposes that a judgment of this kind could afford any protection in the payment

of· the amount deposited. The defendant knew that the depositor was dead; had its attention necessarily called to the rule that on the decease of the depositor the amount standing to his credit shall be paid to his legal representative. The reason for the rule in regard to the presentation of the pass-book entirely ceases upon the death of the depositor. That rule is to protect the bank in payments made to persons apparently having authority to collect, when they are ignorant of the fact that by operation of law there has been a devolution of title.

Where there has been a devolution of title by operation of law, such as occurs upon the decease of a depositor, the rules of the defendant are explicit that payment will only be made to the legal representatives of the deceased. Therefore, if they pay to anybody else, they necessarily pay at their peril, and it is for them to justify the payment by showing that the party had a legal right to receive the money in question. The two rules operate upon an entirely different state of circumstances — the one being to protect the bank against the carelessness of the depositor, and the other to protect the depositor when he is no longer in a position to protect himself. The defendant seems, in the payment made in the case at bar, to have lost sight of this latter rule, and to have acted in violation of its provisions.

We think, therefore, that the plaintiff was entitled to have this question submitted to the jury at least, and the exception taken to the refusal so to do should be sustained and a new trial ordered, with costs to the plaintiff, to abide the final event.

Barrett and Patterson, JJ., concurred.

Exceptions sustained and new trial ordered, with costs to the plaintiff, to abide final event.