have been made lighter if greater skill had been exercised and more trouble taken, yet, as the work was done to the satisfaction of the owners and architects, and was all done and performed as charged for, I recommend affirmance.

Judgment affirmed, with costs. All concur.

---

## PODMORE v. SOUTH BROOKLYN SAV. INST.

(Supreme Court, Appellate Division, First Department. February 23, 1900.)

1. BANKS—DEPOSITS—PAYMENT—DILIGENCE—QUESTION FOR JURY.

　Where R. presented decedent's pass book to defendant bank, demanding the deposit, and saying that it had been given to her by decedent, and, after she had produced affidavits proving decedent's death and the alleged gift, the bank paid her the money, whether the bank acted with due diligence in ascertaining if she was entitled thereto was for the jury.

2. BANKS AND BANKING—BY-LAWS.

　Where a bank by-law provided that the bank would endeavor to prevent frauds, but that payment to any one presenting a pass book would discharge the bank, and another by-law provided that, on the death of a depositor, his deposit should be paid to his personal representative, the first applied only to payments made in the lifetime of the depositor, and did not relieve the bank from exercising diligence to ascertain whether one who presented decedent's pass book was entitled to receive payment.

3. GIFTS CAUSA MORTIS—TRUSTS.

　Where decedent delivered her bank pass books to witness, saying: "I'm afraid I am going to die. Take these books, and bury me out of them, and what is left is yours,"—there was a valid gift causa mortis; for such terms did not make the gift conditional, but merely created a trust for the purpose named.

4. SAME.

　Where there was evidence that decedent had made a valid gift causa mortis to witness of certain books, but there was no evidence that such books were bank pass books, as alleged by defendant, except the statement of witness, and she was a party in interest, whether there was a valid gift of the pass books was for the jury.

Appeal from trial term, New York county.

Action by John Podmore, as administrator of Annie Podmore, deceased, against the South Brooklyn Savings Institution. From a judgment in favor of defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, McLAUGHLIN, PATTERSON, and O'BRIEN, JJ.

Michael Schaap, for appellant.

J. Warren Greene, for respondent.

BARRETT, J. This action was brought to recover the balance due to the plaintiff's intestate, Annie Podmore, at the time of her death, upon an account which she had with the defendant under the name of Ann Caldwell. After Mrs. Podmore's death, one Bridget Reilley presented the depositor's pass book to the defendant, stating that it had been given to her by Ann Caldwell, and she then demanded the balance. The defendant's secretary, Mr. Anderson, advised her to see the counsel of the bank, and told her that, if he was satisfied,

the bank would pay her. A report was subsequently made in favor of Mrs. Reilley's claim, whereupon the bank paid the entire balance to her. The counsel did not see Mrs. Reilley or her witnesses. His report was based upon affidavits furnished him by Mrs. Reilley's attorney. These affidavits gave the date of Ann Caldwell's death and of the alleged gift causa mortis. The first question, therefore, is whether the bank was protected in thus making this payment to Mrs. Reilley, with full knowledge of Ann Caldwell's death. The learned trial justice held as matter of law that it was, and denied the plaintiff's request to go to the jury on that head. He also denied the plaintiff's request to go to the jury upon the question whether there was a valid gift of the deposit by the deceased to Mrs. Reilley. His decision is sought to be sustained upon three grounds: First, that the plaintiff failed to identify his intestate with the Ann Caldwell who made the deposit with the defendant; second, that the uncontradicted evidence showed that the defendant exercised due diligence before paying the money to Mrs. Reilley, and was justified, under the circumstances disclosed, in paying it to her; third, that Ann Caldwell, the depositor, made a valid gift of the bank book and of the money represented by it to Mrs. Reilley.

As to the first point, no discussion is necessary. The learned trial justice ruled against the defendant on the question thus presented. The defendant moved to dismiss the complaint upon the specific ground that it had "not been proved that Mrs. Podmore, the intestate, was the same person who deposited the money in the South Brooklyn Savings Institution, mentioned in the complaint in this action"; and that motion was denied. The learned trial justice thus held, and we quite agree with him, that there was evidence enough to go to the jury on that point. He ruled in the defendant's favor, however, upon the second and third of the above propositions. As to the second, we are unable to agree with the respondent or with the learned trial justice. The uncontradicted evidence either showed a lack of due diligence, or, at the outside, presented a question for the consideration of the jury. It is, however, contended that diligence was not required, and that the bank was justified in making the payment without any inquiry. This contention is based upon Mrs. Reilley's possession of the pass book, with the depositor's agreement to be bound by the following by-law:

"Although the institution will endeavor to prevent frauds and impositions, yet all payments to persons producing the pass books issued by it shall be valid payments to discharge the institution."

This by-law, however, immediately succeeds another, which reads as follows:

"On the decease of any depositor, the amount standing to the credit of the deceased shall be paid to his or her legal representatives."

We think the first-quoted by-law applies only to payments made in the lifetime of the depositor, or, at furthest, to payments made without knowledge of his decease. That by-law contemplates, and was aimed to secure, continuous vigilance on the depositor's part to prevent fraudulent possession of his pass book. It surely was not intended to apply when he was no longer here to guard his pass

book. That the contract on that head was to cease at his death is clearly evidenced by the independent by-law, providing for the bank's duty with regard to payment after that event. It was held in Farmer v. Institution, 60 Hun, 462, 15 N. Y. Supp. 235, treating of similar by-laws, that they operate upon an entirely different state of circumstances,—the one being to protect the bank against the carelessness of the depositor, and the other to protect the depositor when he is no longer in a position to protect himself. This case is directly in point, and was correctly decided. We think the reasoning of Presiding Justice Van Brunt there is quite conclusive. It leaves nothing more to be said upon the question.

The defendant must, therefore, stand upon the right and title of Mrs. Reilley; and that brings us to the consideration of the respondent's third proposition. Was there a valid gift causa mortis to Mrs. Reilley? Two seemingly disinterested witnesses testified on the subject of this gift. One of them, Mrs. Madden, testified as follows:

"I was present at a transaction between Mrs. Reilley and Mrs. Caldwell in Mrs. Reilley's room, in the afternoon of November 22d, two days before Mrs. Caldwell died. Mrs. Reilley was changing Mrs. Caldwell's clothes, and she had a bag around her, and she took from it a number of books. I can't say how many, or what they were, but she took the books from the bag, and handed them to Mrs. Reilley; and Mrs. Reilley said: 'You are a very sick woman.' She says: 'Yes, I am. I'm afraid I am going to die.' She said: 'Take these books, and bury me out of them, and what is left out of it is yours,'—and handed Mrs. Reilley the books. Mrs. Reilley took the books, and put them in the drawer on the bureau."

The other witness, Mrs. Hurst, gave the following account of what happened:

"I am quite sure that Mrs. Caldwell presented the books to Mrs. Reilley, and said: 'I think I am going to die.' She told her she knew she was going to die. No; I don't think she said that more than once, but she did say that. She did say: 'I am going to die, and upon that account'—I am sure of that —'upon that account I am giving you these books. Bury me out of those, and what is left shall be yours.'"

Assuming that the pass book in question was one of those then and there delivered by the deceased to Mrs. Reilley, we think the language used in connection with the delivery constituted a valid gift causa mortis. There was no reservation or limitation attached to the gift. It was absolute and unconditional. It has been repeatedly held, both in England and in this country, that words of similar import to those here used, "Take these books, and bury me out of them, and what is left is yours," do not limit or place a condition upon the gift. They simply impose upon the donee a trust duty to pay the expenses of the donor's funeral. Hills v. Hills, 8 Mees. & W. 401; Bouts v. Ellis, 17 Beav. 121; Blount v. Burrow, 4 Brown, Ch. 72; Clough v. Clough, 117 Mass. 83; Pierce v. Bank, 129 Mass. 425; Curtis v. Bank, 77 Me. 151.

The testimony of these witnesses, however, failed the defendant in one important particular. They were unable to identify the particular pass book in question as one of those which were delivered by the deceased to Mrs. Reilley. This, of course, was essential. In re Wiegel's Estate, 76 Hun, 462, 28 N. Y. Supp. 95; Podmore v. Bank,

29 Misc. Rep. 393, 60 N. Y. Supp. 533. Mrs. Reilley, however, supplied the proof of identification. She was called by the plaintiff for another purpose, and upon her cross-examination she testified, that the book in question was given to her by Ann Caldwell. The only objection made to this testimony was that it was not cross-examination. The defendant's counsel then stated that he would make Mrs. Reilley his own witness for that purpose, and there was no further objection to the question. But while this testimony thus became a proper subject for the consideration of the jury, it was not conclusive. As the defendant practically stood in Mrs. Reilley's shoes, she was to all intents and purposes an interested witness, and her testimony should have been treated as though she were herself the contesting party. The learned trial justice should certainly have submitted the question of her credibility to the jury. The validity of the gift depended upon the actual delivery of this particular pass book at the time and under the circumstances disclosed by the other witnesses, and consequently it was error to withdraw from the jury the question as to whether or not there was a valid gift.

There were other rulings which would probably have necessitated a new trial; but, in view of the point discussed, we do not deem it necessary to consider them. We may say, however, that the affidavits which were furnished by Mrs. Reilley's attorney to the defendant's counsel should not have been admitted in evidence generally. They were evidence only upon the question of diligence, and yet they seem to have been placed unqualifiedly before the jury as evidence of the alleged gift.

The judgment appealed from, and the order denying the plaintiff's motion for a new trial, should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.