any one office than there are persons to be elected thereto." If this language means anything, it applies to all persons in making any nomination. I think the intent of this provision is plain that a man having once joined in nominating a candidate shall not thereafter join in nominating another for that same office at that election. This provision is aimed at the reprehensible practice of men of one party voting at and dominating the caucuses of another, or joining in an independent nomination. But we have nothing to do here with the policy of this law or with its results. It is simply a question of construction of words which the Legislature has adopted as the law of the land, and which the court must expound and enforce. Neither of these prohibitions give room for the court to depart from them. The objects of the prohibitions are plain; the language is explicit. It is susceptible of no two constructions, and to trifle with the language of the law would be, under the circumstances, a crime.

I do not think the question as to the validity of the certificate is before me. Whether the clerk has the authority to substitute a name for the one here included is for him to decide. I do not think the court is called upon to pass upon those questions. All that the court on this occasion decides is that the words "Independent Republican Party" in the certificate are unauthorized, and in violation of the express prohibition of the statute under which the certificate was made and filed; and, second, that if any person joined in the certificate who had joined in nominating another candidate, his signature to the certificate is of no avail, and must be disregarded. Let an order of the court be made in harmony with the decision just announced.

Ordered accordingly.

---

(41 Misc. Rep. 517.)

### HOFFMAN v. UNION DIME SAV. INST.

(Supreme Court, Trial Term, New York County. October, 1903.)

1. SAVINGS BANKS—DEPOSITS—DEATH OF DEPOSITOR—LIABILITIES.

　　A by-law of a savings bank provided that the deposit of a deceased depositor should be paid to her representative. The bank also had on file a power of attorney, executed by her to a third person, to draw the deposit, in accordance with which after her death it paid the deposit to the third person. *Held*, that it was liable to her administrator for failure to inquire whether she was still living, and to know that the power had been revoked by her death.

2. SAME—PAYMENT—VALIDITY.

　　Where a savings bank, after the death of a depositor, pays the deposit to a third person having a power of attorney, it is not protected in such payment by a by-law providing that the bank should be discharged on payment of the deposit to any one producing the deposit book, as such by-law is for the protection of the living alone.

Action by George Hoffman, administrator of Julia Huf, against the Union Dime Savings Institution. Judgment for plaintiff.

Eugene Loewenthal, for plaintiff.

Ritch, Woodford, Bovee & Butcher (C. N. Bovee, Jr., of counsel), for defendant.

¶ 2. See Banks and Banking, vol. 6, Cent. Dig. § 1174.

CLARKE, J.   Action by an administrator to recover the amount of deposit of his decedent from the savings bank.   Tried by the court without a jury.   On the 4th of April, 1900, Julia Huf opened a deposit account with the defendant, and, as evidence thereof, received a bankbook, No. 354,443, in which were printed certain of the by-laws of the bank.   She signed her name in the signature book of the bank, and also signed an identification card.   The signature book which she signed contained the by-laws of defendant then in force.   On the 19th of July, 1900, there was filed with defendant a duly executed power of attorney, acknowledged by Julia Huf July 17, 1900, in which she "made, constituted, and appointed" George Thoma her true and lawful attorney—

"For me and in my place and stead, and to my use, to deposit in any bank or banks he sees fit, moneys belonging to me, in my possession or under my control, or moneys belonging to me and in the possession of other person or persons, after collecting the same on my behalf.   I also give said George Thoma full power and authority to draw on my behalf and for my use any sum or sums of money at any bank or at all banks in which my said funds shall be deposited hereafter or may now be deposited, giving my said attorney full power to do everything whatsoever requisite and necessary to be done in the premises, as fully as I could do if personally present with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do, or cause to be done, by virtue hereof."

George Thoma at the time of filing said power of attorney also signed, as attorney, Mrs. Huf's identification card.   Julia Huf, who was a woman upwards of 85 years, died September 14, 1900.   Upon that day the amount standing to her credit on the books of the defendant was $2,454.80.   On the 15th day of September, the day after her death, George Thoma, who was aware of her death, presented to the bank the bankbook and an order in writing, signed by himself as attorney, in the sum of $454.80, and was paid said amount.   On the 18th of September, three days thereafter, he again presented the book and a similar order for $2,000, the entire balance, and the bank paid the same, closing the account.   At the time of payment the bank had received no notice of the death of Julia Huf. At the time of the presentation of each draft and the payment thereof, the bank, by its officers, made no inquiry whatever as to whether the depositor, Julia Huf, was still alive.

The above facts being clearly established, the administrator claims to recover upon the ground that the death of Julia Huf revoked the power of attorney, and that therefore the payment to Thoma was unwarranted and unlawful.   The bank defends upon the ground, first, that one of its by-laws provides:   "(8) Depositors alone shall be responsible for the safe keeping of their books.   And all payments made to persons producing the deposit books, whether with or without an order or letter of attorney, purporting to be signed by the depositor, shall be deemed good and valid payments to depositors respectively and shall fully discharge the institution therefrom;" and, secondly, that this power of attorney was coupled with such an interest in George Thoma that it was not revoked by Julia Huf's death. As to the first contention, section 6 of defendant's by-laws provides,

"On the decease of any depositor the amount standing to the credit of the deceased shall be paid to his or her legal representative." The holder of a naked power of attorney is not such legal representative. The administrator is. The learned Appellate Division held in Podmore v. South Brooklyn Sav. Inst., 48 App. Div. 218, 62 N. Y. Supp. 961, construing similar provisions:

"That by-law contemplates and was aimed to secure continuous viligance on the depositor's part to prevent fraudulent possession of his passbook. It surely was not intended to apply when he was no longer here to guard his passbook. That the contract on that event was to cease at his death is clearly evidenced by the independent by-law providing for the bank's duty with regard to paying after that event."

See, also, Farmer v. Manhattan Sav. Inst., 60 Hun, 462, 15 N. Y. Supp. 235.

The Podmore Case went to the Court of Appeals as Mahon v. South Brooklyn Sav. Inst., 175 N. Y. 69, 67 N. E. 118. Evidence was offered and excluded tending to show that the bank exercised due care in making the payment. Said the court:

"We think the evidence was properly excluded. The rule of diligence invoked by the defendant bank applies only to the case of a living depositor. When, through a depositor's carelessness, his bankbook gets into the hands of a third person, who presents it to the bank, the latter may show its care and diligence in making payment to the person presenting the passbook, and thus protect itself against a second demand for payment by the careless depositor. But this by-law, which is designed to protect the bank in such a case, must be read in connection with the other by-law, which provides that, after the depositor's death, payment must be made 'to his or her legal representative.' This latter by-law is for the protection of the depositor, who could no longer protect himself, and therefore the bank was bound to see that payment was made to the proper person. Payment to any other person was made at the bank's peril."

So far as the case at bar is concerned, the bank had on file a plain, simple, power of attorney, which it was bound to know became revoked eo instanti upon the death of Julia Huf. It paid two drafts, comprising the whole account, within three days, upon the strength of that power of attorney, without an inquiry as to whether Julia Huf was alive or dead. It paid at its peril, and is bound by its own by-laws to make good to Julia Huf's legal representative, unless the proof has clearly established that said power was coupled with such an interest in George Thoma as caused it to survive Julia Huf's death. There is no such clear, strong, and convincing proof as would warrant any such finding of fact. The power of attorney certainly contains no suggestion. That was to deposit and to draw for Julia Huf's use solely. Some oral testimony is offered to show, first, a gift. The evidence fails far short of establishing a gift, either in præsenti or causa mortis. Again, it is claimed that certain statements made from time to time by decedent as to having masses said for her, and to see that she had a nice funeral, established such an interest in George Thoma in this fund as made the power irrevocable. I do not think so. The evidence is weak, uncertain, and unreliable. I do not believe it. It seems to me that it was a bold attempt on George Thoma's part to get possession of Julia Huf's estate for his own purposes, by taking advantage of the power of attorney, and by conceal-

ing the fact of her death from the bank. The bank paid without taking ordinary precaution, and its defense is not made out.

Judgment for plaintiff for $2,454.80 principal, and interest at 3½ per cent. to date of demand, $163.73, and from June 28, 1902, to date of judgment at 6 per cent. Defendant may have 30 days' stay after notice of entry of judgment, and 30 days in which to make a case. Submit findings, etc., on notice.

Judgment for plaintiff.