shares, refrained from selling them in consequence of false, fraudulent, and untrue statements, upon which she relied. The complaint is framed in such a way as to ask relief against all of the defendants. The indefiniteness of the complaint in respect to very substantial allegations affecting the liability of the defendants is apparent. It is not shown that at all the times therein mentioned all the defendants were directors, or were connected with, or could be made responsible for, false representations, if such representations were made. It is true, the complaint says that at the times mentioned the defendants were directors, but it is obvious from reading the pleading that it cannot be assumed that each and every one of the defendants was a director of the corporation at each and every time referred to in the complaint. We think, therefore, the court below was right in ruling that there should be a specific allegation as to which of the defendants were directors at the respective times the alleged false reports or statements upon which the plaintiff relied were put forth; and so with relation to the times at which the plaintiff purchased her stock. It may be that such purchase was made before any of the statements or representations were put forth which the plaintiff claims to be false; and, further than that, as each defendant is sought to be made liable for his own fraudulent statement or representation, he should be connected by positive allegation with representations, responsibility for which is sought to be charged upon him.

We think the order should be affirmed, with $10 costs and disbursements. All concur.

---

(92 App. Div. 506.)

MAHON v. DIME SAV. BANK OF BROOKLYN.

(Supreme Court, Appellate Division, First Department. March 25, 1904.)

1. GIFTS CAUSA MORTIS.
    Where one who was ill stated that she was "going to die," and handed another a number of bankbooks, saying, "Bury me out of this, and whatever is left is yours," there was a good gift causa mortis.

2. SAME—GIFTS—IDENTITY OF PROPERTY DELIVERED—EVIDENCE.
    On an issue as to whether a certain bankbook had been included among a number of bankbooks which were the subject of a gift causa mortis, evidence considered, and *held* sufficient to show that such was the case.
    Van Brunt, P. J., dissenting.

Appeal from Trial Term, New York County.

Action by Mary E. Mahon, as administratrix de bonis non, etc., of Annie Colwell, against the Dime Savings Bank of Brooklyn. From a judgment in favor of plaintiff, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

C. N. Bovee, for appellant.
Edward Hymes, for respondent.

McLAUGHLIN, J. This action was brought to recover a balance due to the plaintiff's intestate, Annie Podmore, which, at the time of

¶ 1. See Gifts, vol. 24, Cent. Dig. §§ 136, 149.

her death, she had on deposit with the defendant under the name of Annie Colwell. The action was originally brought by John Podmore, as administrator, but subsequent to its commencement he died, and the plaintiff was substituted as administratrix de bonis non. The answer, among other defenses, alleged a gift causa mortis by Annie Podmore to one Bridget Reilly, and payment by the bank to her of the amount for which a recovery was sought. At the trial the facts were undisputed that after the death of Mrs. Podmore Mrs. Reilly presented the passbook which the defendant had issued to Mrs. Podmore, and demanded payment of the money represented thereby, and that after some negotiations such sum was paid to her; but it was insisted on the part of the plaintiff that there was no legal justification for this payment. Bearing upon this claim, at the conclusion of the trial two questions were submitted to the jury: (1) Whether there was a gift of the passbook and money represented thereby to Mrs. Reilly; and (2) whether the evidence established the identity of the book in question as one of those given. The jury found for the plaintiff, and defendant has appealed.

Upon the subject of the gift the defendant read, under a stipulation, the testimony given by a Mrs. Catherine Hurst in an action in which the amount represented by another passbook was involved. She there testified, in substance, that she was acquainted with Mrs. Reilly, and had been with Mrs. Colwell in her lifetime; that on the 22d of November, 1897, she was at Mrs. Reilly's house, and there saw Mrs. Colwell, who was then very sick; that Mrs. Reilly, assisted by herself and a Mrs. Madden, changed Mrs. Colwell's clothes, and as they did so they found secreted about her waist a bag in which there were a number of bankbooks; that Mrs. Reilly then said to Mrs. Colwell, " 'Now you are very sick,' and she replied, 'Yes, I am going to die,' and she then handed Mrs. Reilly the bankbooks which were in the bag, at the same time saying, 'Bury me out of this, and whatever is left is yours.' " The statement thus made by Mrs. Hurst was fully corroborated by a witness produced at the trial—Mrs. Madden—who stated that she was present on the occasion referred to by Mrs. Hurst, and heard the conversation related by her; that she saw the bag, and saw the intestate take the bankbooks from it and give them to Mrs. Reilly. She repeated the conversation which then took place between the deceased and Mrs. Reilly as follows:

"We all knew she was sick. Mrs. Reilly said, 'You are pretty sick, Auntie,' and she said, 'Yes.' She sat up, and she says, 'Yes, I am pretty sick.' She says, 'I think I am dying.' So she says: 'This is all I have. I give you this. If I die, bury me out of this, and what is left is yours.' As she made that statement she handed the bundle of books to Mrs. Reilly. Mrs. Hurst was present in the same room, and she could hear what was said."

These two witnesses were seemingly disinterested. Their testimony was uncontradicted, and there is nothing which tends in the slightest degree to render the same suspicious, or to indicate that their statements were not true. Assuming, therefore, that the book in question was one of those then and there delivered by Mrs. Colwell to Mrs. Reilly, I think what was said, in connection with the delivery, constituted a valid gift causa mortis. This was the view entertained by

this court in Podmore v. South Brooklyn Savings Institution, 48 App. Div. 218, 62 N. Y. Supp. 961, where Barrett, J., said:

"There was no reservation or limitation attached to the gift. It was absolute and unconditional. It has been repeatedly held, both in England and in this country, that words of similar import to those here used, 'Take these books, and bury me out of them, and what is left out of it is yours,' do not limit or place a condition upon the gift. They simply impose upon the donee a trust duty to pay the expenses of the donor's funeral. Hills v. Hills, 8 M. & W. 401; Bourts v. Ellis, 17 Beav. 121; Blount v. Burrow, 4 Bro. Ch. C. 72; Clough v. Clough, 117 Mass. 83; Pierce v. Boston Savings Bank, 129 Mass. 425 [37 Am. Rep. 371]; Curtis v. Portland Savings Bank, 77 Me. 151 [52 Am. Rep. 750]."

On the subject of the identification of the books the evidence is equally satisfactory. Mrs. Madden testified that after the books were taken from the bag and delivered by the deceased to Mrs. Reilly she put them in a chiffonier top drawer, and two days later she saw Mrs. Reilly take the books from the drawer where she put them, and give them to a Mr. Berg; that Mr. Berg gave a receipt for the books, which specified each book and its number; that, Mrs. Reilly being unable to read or write, the witness checked off the books specified in the receipt, and there was a Dime Savings Bank·book in the list; that this book, with the others, was taken away by Mr. Berg. M·s. Reilly testified, without objection, that on the 22d of November (this was the day Mrs. Madden and Mrs. Hurst testified the books were delivered to Mrs. Reilly) she put the "bundle of books" in the drawer, and did not take them therefrom until the 24th, when she delivered them to Mr. Berg, and he gave her a receipt for them, which she had lost. Mr. Berg testified that he was an attorney at law, and on the 24th of November, in response to a communication from Mrs. Reilly, he called upon her, and she then took from the top drawer of a chiffonier a bundle of bankbooks, and delivered them to him; that he examined them, and gave a receipt for them, in which he specified each book and its number; that one of the books was the one in question; that its number was 204,583; that this book was delivered by him to the defendant, and he received the money represented by it. He was corroborated by some of the officers of the bank as to delivery of the book and payment of the money. The bank was unable to produce the original book, but the fact that the same was delivered to it by Berg was not disputed. We have, therefore, taking all the testimony together, evidence satisfactorily identifying the book issued by the defendant to Annie Podmore under the name of Annie Colwell as one of the books delivered by her to Mrs. Reilly on the 22d of November. If I am correct as to the force to be accorded to the evidence above alluded to, then we have a valid gift causa mortis of the book in question to Mrs. Reilly, and the defendant was not only justified, but was legally obligated, to pay to her the money represented by the book, and could not be thereafter compelled to again pay the same to Mrs. Colwell's estate.

The finding of the jury is against the weight of evidence, and for that reason the judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except VAN BRUNT, P. J., who dissents.