(Cowee v. Cornell, 75 N. Y. 91, 98, 31 Am. Rep. 428; Slade v. Hood, 13 Gray, 97; Anthony v. Valentine, 130 Mass. 119); and, while it may be that the defendant owes the plaintiff a certain moral obligation to see that the amount of the note is paid, we are of opinion that the evidence establishes that there was never any valid consideration moving to the defendant, and that the only purpose of the note was to accommodate the plaintiff during the time that he was obliged to wait for payment from the life tenant of the estate of William Meth.

The judgment appealed from should be affirmed, with costs.

---

### HOFFMAN v. UNION DIME SAV. INST.

(Supreme Court, Appellate Division, First Department. June 10, 1904.)

1. DEPOSITS—PAYMENT—POWER OF ATTORNEY—WITNESSES—INTEREST—TRANSACTION WITH DECEASED PERSON.

Where, in an action by the administrator of a bank depositor to recover the deposit which the bank had paid to the depositor's attorney after the depositor's death without knowledge of such fact, the bank defended on the ground that the attorney held a power coupled with an interest, and the attorney was not a party to the action, and could not have been affected by any judgment rendered therein, he was not incompetent to testify to declarations by the depositor and to acts of his own in relation to the depositor's property with a view to showing his interest therein under Code Civ. Proc. § 829, providing that a party or person interested in the event, or a person from, through, or under whom such a party or interested person derives his interest or title, shall not be examined concerning a personal transaction or communication between the witness and the deceased person.

Patterson, J., dissenting.

Appeal from Trial Term, New York County.

Action by George Hoffman, as administrator of the estate of Julia Huf, deceased, against the Union Dime Savings Institution. From a judgment in favor of plaintiff (85 N. Y. Supp. 16), defendant appeals. Reversed.

Argued before HATCH, McLAUGHLIN, PATTERSON. O'BRIEN, and INGRAHAM, JJ.

C. N. Bovee, for appellant.

I. Balch Louis, for respondent.

O'BRIEN, J. The facts and the questions presented upon the trial are so fully and clearly stated in the opinion of the learned trial judge that we take the liberty of quoting therefrom at length:

"On the 4th of April, 1900, Julia Huf opened a deposit account with the defendant, and as evidence thereof received a bankbook, No. 354,443, in which were printed certain of the by-laws of the bank. She signed her name in the signature book of the bank, and also signed an identification card. The signature book which she signed contained the by-laws of the defendant then in force. On the 19th of July, 1900, there was filed with defendant a duly executed power of attorney acknowledged by Julia Huf July 17, 1900, in which she made, 'constituted, and appointed' George Thoma her true and lawful attorney 'for me and in my place and stead, and to my use, to deposit in any bank or banks he sees fit, moneys belonging to me, in my possession, or under my control, or moneys belonging to me and in the possession

of other person or persons, after collecting the same on my behalf. I also give said George Thoma full power and authority to draw on my behalf and for my use any sum or sums of money at any bank or at all banks in which my said funds shall be deposited hereafter or may be now deposited, giving my said attorney full power to do everything whatsoever requisite and necessary to be done in the premises, as fully as I could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done by virtue hereof.' George Thoma, at the time of filing said power of attorney, also signed as attorney Mrs. Huf's identification card. Julia Huf, who was a woman upwards of 85 years, died September 14, 1900. Upon that day the amount standing to her credit on the books of the defendant was $2,454.80. On the 15th of September—the day after her death —George Thoma, who was aware of her death, presented to the bank the bankbook and an order in writing, signed by himself as attorney, in the sum of $454.80, and was paid said amount. On the 18th of September— three days thereafter—he again presented the book and a similar order for $2,000, the entire balance, and the bank paid the same, closing the account. At the time of payment the bank had received no notice of the death of Julia Huf. At the time of the presentation of each draft and the payment thereof, the bank, by its officers, made no inquiry whatever as to whether the depositor, Julia Huf, was still alive. The above facts being clearly established, the administrator claims to recover upon the ground that the death of Julia Huf revoked the power of attorney, and that, therefore, the payment to Thoma was unwarranted and unlawful. The bank defends upon the grounds, first, that one of its by-laws provides: '(8) Depositors alone shall be responsible for the safe-keeping of their books. And all payments made to persons producing the deposit books, whether with or without an order or letter of attorney, purporting to be signed by the depositor, shall be deemed good and valid payments to depositors respectively, and shall fully discharge the institution therefrom'; and, secondly, that this power of attorney was coupled with such an interest with George Thoma that it was not revoked by Julia Huf's death. As to the first contention, section 6 of the defendant's by-laws provides: 'On the decease of any depositor the amount standing to the credit of the deceased shall be paid to his or her legal representatives.' The holder of a naked power of attorney is not such legal representative; the administrator is. The learned Appellate Division held in Podmore v. South Brooklyn Savings Institution, 48 App. Div. 218 [62 N. Y. Supp. 961], construing similar provisions: 'That by-law contemplates and was aimed to secure continuous vigilance on the depositor's part to prevent fraudulent possession of its passbook. It surely was not intended to apply when he was no longer here to guard his passbook. That the contract, on that event, was to cease at his death, is clearly evidenced by the independent by-law providing for the bank's duty with regard to paying after that event.' See, also, Farmer v. Man. Sav. Inst., 60 Hun, 462 [15 N. Y. Supp. 235]. The Podmore Case went to the Court of Appeals as Mahon, as Executrix, against South Brooklyn Savings Institution, reported Law Journal, May 2, 1903 [67 N. E. 118]. Evidence was offered and excluded tending to show that the bank exercised due care in making the payment. Said the court: 'We think the evidence was properly excluded. The rule of diligence invoked by the defendant bank applies only to the case of a living depositor. When, through a depositor's carelessness, his bankbook gets into the hands of a third person, who presents it to the bank, the latter may show its care and diligence in making payment to the person presenting the passbook, and thus protect itself against a second demand for payment by the careless depositor. But this by-law, which is designed to protect the bank in such a case, must be read in connection with the other by-law, which provides that after the depositor's death payment must be made to his or her legal representatives. This latter by-law is for the protection of the depositor, who could no longer protect himself, and therefore the bank was bound to see that payment was made to the proper person. Payment to any other person was made at the bank's peril.' So far as the case at bar is concerned,

the bank had on file a plain, simple power of attorney, which it was bound to know became revoked eo instanti upon the death of Julia Huf. It paid two drafts, comprising the whole account, within three days, upon the strength of that power of attorney, without an inquiry as to whether Julia Huf was alive or dead. It paid at its peril, and is bound by its by-laws to make good to Julia Huf's legal representative, unless proof is clearly established that said power is coupled with such an interest in George Thoma as caused it to survive Julia Huf's death. There is no such clear, strong, and convincing proof as would warrant any such finding of fact. The power of attorney certainly contains no suggestion. That was to deposit and to draw for Julia Huf's use solely. Some oral testimony is offered to show first a gift. The evidence falls far short of establishing a gift either in præsenti or causa mortis. Again, it is claimed that certain statements made from time to time by decedent as to having masses said for her soul, and to see that she had a nice funeral, established such an interest in George Thoma in this fund as made the power irrevocable. I do not think so. The evidence is weak, uncertain, and unreliable. I do not believe it. It seems to me that it was a bold attempt on George Thoma's part to get possession of Julia Huf's estate for his own purposes by taking advantage of the power of attorney and by concealing the fact of her death from the bank. The bank paid without taking ordinary precaution, and its defense is not made out."

With the conclusion thus reached by the learned trial judge we might agree were it not for errors in the rulings excluding certain evidence offered by the defendant. The questions propounded to the witness George Thoma by counsel for the defendant called for testimony of declarations by the depositor, and acts of Thoma in relation to the depositor's property, with a view of showing an interest in Thoma in the property which was the subject of the power. All of this testimony was objected to under section 829 of the Code of Civil Procedure, and excluded upon the ground that Thoma was a person interested in the event. We think that these rulings were erroneous, for the reason that Thoma was not a party, and, though interested in the question involved, he was not interested in the event of the action, and would not be bound or concluded by the judgment of the court in this action; nor was he a person through whom the defendant derived its interest, within the meaning of section 829 of the Code. Rosseau v. Rouss, 91 App. Div. 230, 86 N. Y. Supp. 497; Albany Co. Sav. Bank v. McCarty, 149 N. Y. 71, 43 N. E. 427; Eisenlord v. Clum, 126 N. Y. 552, 27 N. E. 1024, 12 L. R. A. 836; Hobart v. Hobart, 62 N. Y. 80; Lecour v. Importers' & Traders' Bank, 61 App. Div. 163, 70 N. Y. Supp. 419; Benjamin v. Ver Nooy, 36 App. Div. 581, 55 N. Y. Supp. 796, affirmed 168 N. Y. 578, 61 N. E. 971; Gourlay v. Hamilton, 41 Hun, 437; Wallace v. Straus, 113 N. Y. 238, 21 N. E. 66; Putnam v. Lincoln Safe Deposit Co., 87 App. Div. 13, 83 N. Y. Supp. 1091; Connelly v. O'Connor, 117 N. Y. 91, 22 N. E. 753.

Section 829 of the Code provides that "a party or person interested in the event or a person from, through or under whom such a party or interested person derives his interest or title, by assignment or otherwise, shall not be examined * * * concerning a personal transaction or communication between the witness and the deceased person." In Rosseau v. Rouss, supra, the authorities are collated, and reference is made to Connelly v. O'Connor, supra, where the court say:

"In construing that section it has been held that the test of interest, where the witness is not a party, is that the witness 'will either gain or lose by the direct legal operation of the judgment, or that the record will be legal evidence for or against him in some other action. It must be a present, certain, and vested interest, and not an interest uncertain, remote, or contingent.'"

The subject is also discussed at length and the rule reaffirmed by this court in Lecour v. Importers' & Traders' Bank, supra. And in Albany Co. Savings Bank v. McCarty, supra, it was said by the Court of Appeals:

"An interest in the question is not enough to disqualify, as that is not an interest in the event. Unless the witness will gain or lose by the event, either directly, as in money, or indirectly, because the record could be used as evidence for or against him, he is not disqualified."

This principle is also stated in Putnam v. Lincoln Safe Deposit Co., supra, and therein Redfield v. Redfield, 110 N. Y. 671, 18 N. E. 373, cited by the respondent, is referred to as having been repudiated by the Court of Appeals.

Under the rule, therefore, Thoma had no interest in the event. He was not a party, would take nothing by the judgment, and it could not bind him. At most the result as to him was contingent, namely, if the bank were unsuccessful in the action, then it might sue him for moneys paid to him. We think, therefore, that the testimony of Thoma was competent and material, as bearing upon the defenses urged that this fund was a gift to Thoma, or that, in addition to his naked power of attorney, he had some interest in the fund. How far the evidence might or might not change the result we are unable, in its absence, to determine. But as the defendant was entitled to the benefit of the testimony for what it was worth, the rulings excluding it were erroneous. Even though the evidence were not sufficient to show either a gift to Thoma or an interest in the fund, still, if it appeared therefrom that out of such fund Thoma had paid the funeral expenses, or in other ways had established a right to have moneys allowed to him from the fund because properly paid by him for the benefit of the estate of the deceased, it may be that the learned trial judge would have held that to such extent the defendant was equitably subrogated to the rights of Thoma, and entitled to credit for such payments. We do not undertake to determine whether such allowance could or could not legally be made, but we think that the defendant was entitled to have all the evidence bearing upon the defenses interposed presented.

For the errors assigned, therefore, we think that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except PATTERSON, J., who dissents.