February 8, 1910, should be confirmed, and that the petition herein for revocation of said probate should be denied.

Let detailed findings be prepared in accordance with the terms of this decision and settled on five days' notice, and let a decree be entered thereupon, without costs to either party as against the other.

Decreed accordingly.

(73 Misc. Rep. 182.)

### In re HERRINGTON'S ESTATE.

(Surrogate's Court, Rensselaer County. July, 1911.)

1. WITNESSES (§ 140*)—COMPETENCY—TRANSACTIONS WITH DECEDENT.

Where it is sought to charge an executor on settlement of his accounts with property which he determined did not belong to the estate, he is entitled to show the evidence on which he acted, and the person claiming the property by gift prior to death of testatrix is not disqualified by Code Civ. Proc. § 829, to testify as to such gift.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 598–619; Dec. Dig. § 140.*]

2. WITNESSES (§ 140*)—TRANSACTIONS WITH DECEDENT—"PARTY OR PERSON INTERESTED IN THE EVENT."

A "party or a person interested in an event," within Code Civ. Proc. § 829, relating to competency of witnesses, is one who will gain or lose by the event, because the record might be used as evidence for or against him, and, being interested in the question, is not being interested in the event, and he is not interested within the statute, though he might be liable in an action against him for contribution, unless the judgment itself would be evidence against him in such action.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 598–619; Dec. Dig. § 140.*

For other definitions, see Words and Phrases, vol. 4, pp. 3692–3709; vol. 8, p. 7691.]

3. GIFTS (§ 49*)—GIFTS CAUSA MORTIS—EVIDENCE.

Evidence held insufficient to show gift of several bank deposits standing in the name of deceased at the time of her death to her son.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 95–100; Dec. Dig. § 49.*]

In the matter of the settlement of the estate of Arlina Herrington. Decree rendered.

B. W. File, for the executor.
B. E. De Groot, for Matilda Herrington and others.
Akin & Keenan, for John J. Herrington.
McChesney & Gillet, for Mary J. Haviland.

HEATON, S. This proceeding was begun by a citation to show cause why the executor should not render and settle his account, and was followed by a voluntary application for judicial settlement by the executor with which proceeding the original application was consolidated.

Objections to the account were filed by several legatees, but all have been adjusted except two, which have been tried, and which were, in substance, that the account of the executor should be surcharged with (1) $2,300 and interest from April 1, 1905, as the agreed

amount due on a certain bond and mortgage made by William G. Haviland and wife, Mary J., to Arlina Herrington, dated April 3, 1883, to secure $3,400 and interest; and (2) with $5,274.59 and interest, being the amounts of several bank deposits standing in the name of the deceased at the time of her death and subsequently withdrawn by the executor and redeposited to his own credit.

Arlina Herrington, was an old lady, living on a farm conducted by her with the help of her unmarried son Norman and Miss Carrie Hall, whom she had brought up. She had another son, John, a daughter, Mary J. Haviland, and several granddaughters. On the 12th day of March, 1905, she made her will appointing her son Norman executor, and dividing her personal estate among the people above named, and giving Mrs. Haviland $1,000, Emma McMurray, a granddaughter, $500, and Clara Clifford, a granddaughter, $200, and Dora M. Herrington, a granddaughter, $200, and the residue of her estate equally to her three children and two grandchildren. At the time she made her will her estate consisted of the mortgage, the bank deposits, and the farm and household personal property, amounting in all to the value of about $8,800. The testatrix died on the 14th day of May, 1906, after an illness of several months' duration, during which time the alleged gifts were made.

The executor resists the efforts to surcharge his account by seeking to prove that the bond and mortgage never came into his possession, but were given and delivered to his sister Mary by his mother before her death, and were not the property of his mother at her death, and that the bank deposits were given to himself by his mother before her death and were not her property at that time. The property in dispute was not inventoried as part of the estate of the deceased or accounted for by this executor. The burden of proving it as assets of the deceased is upon the contestants. Heaton, Surr. Ct. pars. 1013, 1014.

As to the Haviland bond and mortgage, the contestants called the executor and showed by him that some time previous to his mother's death she owned the bond and mortgage; that it stood in her name on the record; that he discharged it as executor but received no cash for it.

As to the bank deposits, he testified that the money was in the banks at the time of the death of his mother in her name, and that, thereafter, he withdrew the deposits, using his authority as executor to do so, and redeposited the money in his own name.

To sustain his action in not collecting or accounting for the value of the Haviland bond and mortgage, the executor called Mrs. Haviland as a witness in his behalf; and she testified to a personal transaction with her mother, in April, 1906, about the time the year's interest was due on the mortgage, which evidence is sufficient to prove a valid gift and delivery of the bond and mortgage to Mrs. Haviland. The contestants objected to the reception of such evidence, and now claim that it should be stricken out and the account of the executor be surcharged with the value of such security.

Every representative of an estate, soon after he enters upon the

discharge of his duties, must determine whether claims made against the deceased are honest and valid claims, and whether debts apparently due the deceased are actually due and the true and correct amount thereof. To do this, he must make careful investigation in each case, and necessarily a large part of the information he is able to get must come from the creditor or debtor himself. If, after making such honest inquiry, he is satisfied that a certain debt is due from the deceased, he should pay it; or, if the deceased had a valid claim against a person, he should collect the amount due and release the debtor. He should not in ordinary cases take the position that the true facts will be difficult or impossible of proof under section 829 of the Code of Civil Procedure and put either of such parties to his legal proof. It is the duty of the representative to settle the affairs of the estate; and he may settle or compromise claims for or against the estate, and a settlement made by him can be set aside only upon proof of bad faith or fraud.

It has been recently held in Scully v. McGrath, 201 N. Y. 61, 94 N. E. 195, that, if the representative acts upon the evidence thus obtained out of court, it is necessary for his protection that he should have the benefit of the same evidence in court upon the settlement of his accounts. This right seems to have been accorded to him in Matter of Frazer, 92 N. Y. 239. Since that case, it has been understood that a creditor who is paid by the representative is a competent witness in behalf of the representative when the validity of such payment is questioned upon the accounting. The contestants, while conceding that this rule of evidence has been established as to paid creditors, claim that it should not hold good in a case like the present one to let in the testimony of an alleged debtor to the estate; since they claim it is the duty of the representative to pay a debt, but not the duty of the representative to discharge an existing security without payment. The fault of the executor, if there be a fault, is not in executing a formal discharge, but in determining, after investigation, that the bond and mortgage were not assets of his mother's estate and in failing to collect the same. It was as much his duty to determine the different amounts due to his mother as it was to determine the amounts due other persons from her, and he should have the same protection for his honest acts in the one case as in the other.

[1] Mrs. Haviland was called by the executor to give evidence in his behalf, so that he might not be surcharged in his account with the value of the bond and mortgage which never came to his possession but which she claimed as a gift from his mother. The prohibition contained in section 829 of the Code of Civil Procedure is against a "party or a person interested in the event" being a witness.

In Matter of Albany County Savings Bank v. McCarty, 149 N. Y. 71-84, 43 N. E. 427, it was held that the fact that the witness was a party on the record was not sufficient to exclude him. He must also be a person interested in the event to bring him within the section.

[2] A "party or a person interested in the event" has been held to be one who will gain or lose by the event, either directly, as in money, or indirectly, because the record could be used as evidence for

or against him; that being interested in the question is not being interested in the event. Eisenlord v. Clum, 126 N. Y. 552, 556, 27 N. E. 1024, 12 L. R. A. 836; Albany County Savings Bank v. McCarty, 149 N. Y. 71, 84, 43 N. E. 427. He is not interested, within the meaning of this section, even in a case where he might be liable in an action against him for contribution or reimbursement, unless the judgment itself would be evidence against him in such action. Wallace v. Straus, 113 N. Y. 238, 21 N. E. 66. A person to whom a bank has paid a deposit is not interested in the event, even where, if the bank should be unsuccessful in defending the suit, it might sue the witness for money paid to him. Hoffman v. Union D. S. Inst., 95 App. Div. 329, 88 N. Y. Supp. 686. In Carpenter v. Soule, 88 N. Y. 251, 42 Am. Rep. 248, an action was brought against the executrix to compel the discharge of a mortgage alleged to have been partly paid by a gift made by the testator, and the balance tendered in cash. A specific and residuary legatee was held to be a competent witness against the executor, since, as a residuary legatee, he testified against his interest.

Mrs. Haviland is a "party" to this proceeding as a general and as a residuary legatee; and, if the executor be not surcharged with the amount of her mortgage, she will receive less as a residuary legatee. As a "party," therefore, her testimony is against her interest, and her competency is not affected by section 829. This section further prohibits a "person interested in the event" from being a witness "in his own behalf or interest against the executor." When called in behalf of the executor to prevent if possible a decree against him, he was the "person interested in the event," and not she, since the decree might be against him and in no event could it be against her. By settling the account between the estate which he represented and the alleged debtor to the estate and giving a release of such obligation, the executor assumed the responsibility of his act and became the sole person liable to answer therefor in this proceeding. The decree on this accounting, if it surcharge the executor, could not be evidence against Mrs. Haviland in an action to foreclose the mortgage or otherwise recover from her. No issue is raised here as between the executor and her or between the contestants and her as to the validity of the gift. She is a party to this proceeding solely as a legatee, and not for the purpose of defending the alleged gift. There is no issue here as against her which requires her to produce her evidence upon that subject, and consequently no decree made would bind her upon that issue. Mrs. Haviland was no longer "interested in the event," and was therefore a competent witness in behalf of the executor.

To apply these cases to the witness Haviland, it seems that the mere fact that she is a party to this proceeding does not disqualify her; that she is not in this proceeding a person interested in the event; that she is not called as a witness in her own behalf or interest against the executor; that the executor is entitled to use her testimony to prevent if possible a surcharge of his accounts. This conclusion is apparently contrary to the general understanding of the application of section 829 as applied in proceedings of this nature,

but seems to be in accordance with several decisions where the question has arisen. In the Frazer Case, 92 N. Y. 240, it is flatly stated that a paid creditor may be a witness on behalf of the representative, but the decision indicates that there was sufficient other evidence. In Matter of Babcock & Dunn, 12 N. Y. St. Rep. 841, it was sought to charge the representative with the proceeds of an insurance policy on the life of the deceased payable to his estate. The mother of the deceased claimed the proceeds by virtue of a gift and delivery of the policy from the deceased, but without written assignment. The administrators investigated the facts, joined with the mother in a release to the company, and did not charge themselves with the amount thereof. In resisting the effort to surcharge their accounts, the administrators swore the administrator, Dunn, who apparently was the father and only next of kin of the deceased, as to personal transactions between the deceased and the claimant of the proceeds of the policy, to show the gift, a creditor duly objecting. The surrogate refused to surcharge the account and the General Term affirmed, saying:

"This witness was an administrator. The evidence was given in behalf of the administrators, not against them; and was offered as tending to prove that they were not chargeable with the proceeds of the policy, and was competent."

This case further holds that, because a witness is a "party" as administrator, he is not disqualified, and that, if a "party" as next of kin, he is not disqualified, because testifying against his interest.

In Podmore v. Seaman's Bank, 35 Misc. Rep. 379, 71 N. Y. Supp. 1026, an administrator sued the bank to recover a deposit standing in the name of the deceased, and which the bank had paid to an alleged donee. The bank offered the testimony of the alleged donee to prove the gift which was excluded. On appeal it was held that the donee was not a party or interested in the event, and was therefore a competent witness.

In Matter of Lewis, 5 App. Div. 178, 39 N. Y. Supp. 26, on an accounting by an executor, objection was made that he had not collected and charged himself with certain money obtained from testatrix by a third person pursuant to an agreement with deceased. The executor claimed the right to justify his failure to charge himself with such money by means of the testimony of such third person as to his personal transactions with the deceased in regard thereto; and such person was held to be a competent witness, on the theory that he was not a party to the proceeding or interested in the event.

From these cases, then, it is apparent that, where an account is sought to be surcharged, the representative himself may testify to personal transactions between the deceased and a donee, and he may call the donee to testify to such transactions. If the representative investigates and acts, whether in paying a claim, or in collecting a debt, or refusing to collect or recover an apparent asset, he may have the benefit on his accounting of the evidence upon which he acted; and, if the surrogate finds the evidence sufficient to justify his acts, he will not be surcharged.

From the evidence of the executor that the bond and mortgage in question were not found by him among the assets of the deceased and never came to his possession, and from the testimony of Mrs. Haviland, showing that there was a valid gift and delivery to her of such bond and mortgage by her mother in her lifetime, I find that the executor should not be surcharged with the value thereof.

[3] The second question for consideration is whether the executor should be charged with the bank deposits standing in the name of his mother at her death, the bank books representing the same being in his possession in the house of his mother for some time before her death. His claim is that such deposits were a gift to him through Miss Hall from his mother. The evidence upon this subject is substantially undisputed, and calls for the application of the familiar rule that it must be so clear and convincing that it leaves room for no reasonable doubt as to the intention of the alleged donor to make a complete and unqualified gift. The evidence of the gift is briefly as follows:

It was early in the morning, and the alleged donee was preparing to come to Troy. Just previous to that time, how long does not appear, the pocketbook of Mrs. Herrington was missing from its accustomed place, and it was suggested that it had been stolen. The disappearance of the pocketbook was being discussed on this particular morning, and Mrs. Herrington then asked Miss Hall where her bank books were, and she replied that she supposed they were in the usual place, and she was directed to get them. Upon returning with them and showing them to Mrs. Herrington she said, according to the testimony of Miss Hall: "Give them to Elbridge. I want him to have them." Miss Hall then went to the kitchen and gave the books to the son, who put the books in his pocket, and afterward locked them in his chest. The testimony of Mrs. Herrington, the wife of the contesting son, is substantially the same, excepting that, as she remembers it, Mrs. Herrington said: "Go and give them to Elbridge, and tell him to put them in the drawer." Whether Miss Hall told Elbridge what his mother said does not appear, or whether he returned by the messenger his thanks for the alleged gift, Miss Hall is not positive, but thinks that, once after this occasion, Mrs. Herrington asked her if she gave the books to Elbridge, and, on being told that she did, replied, "All right." It must, therefore, appear that at that time Elbridge had not considered the gift of $5,000 to him as of sufficient importance to suggest an acknowledgment of it to his mother.

The alleged donee was the executor of the alleged donor's will. He was the man of the house. It was thought that a pocketbook had been stolen from the house. The deceased was naturally anxious to keep her bank books safely, not to dispose of them. She directed that they be taken from an unprotected place and given to her son and executor, not apparently with the intention of giving to him the bulk of her estate, but rather of protecting and preserving it, and it is apparent from his actions and attitude toward the whole transaction that he did not think for a moment that his mother was through this

third person making him a present of more than $5,000. He never returned through the messenger or otherwise a word of thanks for this munificent gift, or in any other way indicated that to his mind the transaction was of any importance.

The evidence seems to fall far short of being clear and convincing as to the intention of the alleged donor to make a gift of the money represented by the bank books.

The executor will therefore be surcharged with the amount thereof; and, as the said amounts have been kept on deposit apparently awaiting the outcome of this judicial settlement, such interest will be added as the funds have earned.

Decreed accordingly.