## MARRE *vs.* GINOCHIO.

*In the matter of the Estate of* PAUL LONGINOTTO, *deceased.*

UPON an accounting, the affirmative of establishing more assets than are acknowledged by the inventory and account, is with the party objecting; and it must be established with reasonable certainty, and not left to mere conjecture or suspicion.

A creditor of the estate is not a competent witness to swell the fund out of which he is to be paid, when the estate is insufficient to pay the debts.

The husband of a *feme covert* executrix is jointly liable with his wife in the Surrogate's Court; and where the husband was the surviving partner of the testator, it was *held* that a statement of the partnership affairs was incidentally necessary to the settlement of the accounts of the estate,

and that the husband of the executrix must render such copartnership account.

GERARDUS CLARK and JOHN NEWHOUSE, for Creditors.
C. A. RAPALLO and HORACE F. CLARK, for Executrix.

THE SURROGATE. Letters testamentary were issued to Mary R. Ginochio, a married woman, on the 18th of March, 1850. On the 1st of December, 1851, she presented an application for a final settlement of her accounts, and on the return of the citation a number of creditors appeared, objections were made to the account, and a large amount of testimony was taken.

The testator and Lewis Ginochio were partners in business in this city. They kept an Italian boarding house, to which a store was attached. The store seems to have been managed by Ginochio, and since the testator's death he has wound up the business as surviving partner.

The testator was in the habit from time to time of receiving deposits of money from Italians, and at his decease had considerable sums on deposit in the savings bank and the Life and Trust Company. These sums, however, fall much short of what had been placed in his hands by depositors; and it is urged that the most reasonable manner of accounting for the deficiency, is on the supposition that these funds were contained in a trunk kept by the deceased in his room, which immediately after his death was taken in possession by Lewis Ginochio, the husband of the executrix. There is evidence to show that at different times money was seen in this trunk, but there is nothing to indicate the amount, or to prove that there was in fact anything there at the testator's decease. Longinotto died March 2, 1850; and he made a deposit in the Trust Company of one hundred and twenty-five dollars, so late as February 1, 1850. So far as I have been able to discover, he does not appear to have received anything on deposit after that period except thirty-nine dollars; and the executrix returns,

as cash on hand, at the time of his death, forty dollars. The act of Ginochio, in removing the trunk from the testator's room, on his decease, was proper enough; but, for the satisfaction of parties interested, and for his own protection from suspicion, he should have taken the precaution to have ascertained its contents before witnesses. I would not, nevertheless, be justified in charging him upon mere suspicion, or evidence of so vague a character as to put the Court to a mere guess. The affirmative of establishing more assets than are acknowledged by the inventory and account, is on the party objecting, and must be proved with reasonable certainty and definiteness. I am not satisfied from the evidence, that the trunk contained any more than is acknowledged by the executrix.

It was sought also, on the testimony of Antonio Boggiano to charge Lewis Ginochio with the sum of $600, or $700, alleged to have been loaned by the testator to Ginochio. Boggiano's statement is, that two or three months before the death of Longinotto, he applied to him at the instance of Ginochio, for a loan on account of a candle manufactory in which the latter was engaged; that Longinotto answered that he had already advanced or lent Ginochio six or seven hundred dollars, which reply the witness communicated to Ginochio, who admitted he had had that amount from Longinotto. No one was present at these conversations, and no corroborative evidence has been adduced, so that the proof on this point depends entirely upon the statement of Boggiano. A large number of witnesses were brought to impeach Boggiano, and an equal number to sustain him; without going into details, I must say that the evidence on this subject has, in my judgment, so far affected the reliance to be placed on his testimony, that it would not be proper to hold the executrix liable upon his statement alone, uncorroborated by any other proof. Evidence of conversations and admissions should at all times be received with great caution if not suspicion, and this consideration comes in with much force when any doubt exists as to the credibility of the witness

upon whom the entire burden of proving the alleged admission, depends. Besides, Boggiano is a creditor of the estate for a small amount; and he is not competent as a witness in any matter which goes to swell the fund out of which he is to be paid, which is otherwise insufficient.

The only remaining question relates to the copartnership account of the firm of Longinotto and Ginochio, of which the husband of the executrix is the surviving partner. On his wife becoming executrix and taking out letters, Mr. Ginochio filed the consent required by law, and thereupon became jointly liable with his wife. I have recently had occasion to consider the nature and extent of this liability, in the matter of the estate of Abraham H. Van Wyck, deceased, and came to the conclusion that the husband of a married woman, executrix, is jointly liable with her in the Surrogate's Court. The salutary effect of such a rule is abundantly illustrated by the present case. The executrix has no means of enforcing a settlement of the partnership accounts. Her husband is the surviving partner; she cannot sustain an action against him, as at law the execution has devolved on him. There is no mode of investigating these accounts unless at the instance of a creditor or other party in interest, or on an application for a final accounting. In determining how far the executrix is liable for the interest of the deceased in the partnership assets, it becomes incidentally necessary to examine the partnership accounts, in order to ascertain what the interest of the deceased was. As where the surviving partner is also the executor of the deceased partner,—so where the surviving partner is husband of the executrix of the deceased partner, a statement of the partnership affairs is incident to the settlement of the accounts of the executor or executrix; and in a case of *final* accounting is absolutely necessary to a *final* adjustment of the estate. A final accounting is a voluntary proceeding, a submission on the part of the executor, or administrator, of "all questions" connected with the distribution of the estate (2 *R. S.*, 3*d ed.*, *p.* 159, § 75); and of

course, when the settlement of the accounts necessarily involves the investigation of the partnership affairs, *that* question is submitted with others.

As it was understood on the hearing that, if I should come to this conclusion, an opportunity would be afforded for further examination of the partnership affairs, a day must be appointed for that purpose.

———

In the same matter, the partnership accounts having been rendered by the husband of the executrix, and proofs taken, it was found that the estate was sufficient for the payment of all the debts, and a decree was made accordingly.