In the Matter of the Final Judicial Settlement of the Accounts of JAMES STEVENSON and Another, as Executors, etc., of BETSEY EVERTS, Deceased, Respondents; CLARISSE M. HARRISON, Appellant.

*Surcharging an executor's account — impeachment of payment of a claim for nursing by a daughter — no implied contract — cases where an executor has allowed and has not allowed a claim, contrasted.*

Upon an accounting the affirmative of establishing more assets than are acknowledged by the inventory and account is with the party objecting, and it should be established with reasonable certainty and not left to mere conjecture or suspicion.

Upon an accounting by executors the burden rests upon the contestants to impeach the payment by the executors of the claim of a daughter of their testatrix for nursing the deceased, and where such a claim has been paid by the executors, it cannot be presumed, as a matter of law from the fact that the deceased lived with her daughter, that there was no agreement that such daughter should be paid for her services.

The individual claim of an executrix against the estate of her testator must be established by legal evidence.

Where a question is presented as to the allowance to an executrix of a claim made by her for nursing the testatrix, her mother, the performance of a filial duty should not be placed upon a pecuniary basis, nor should a child living away from home, if she performs services for a sick parent, be entitled, as a matter of law, to compensation upon the basis of a contract obligation.

The mere fact that one person labors for another is ordinarily sufficient to sustain the finding of an implied contract to pay therefor, but this rule does not apply when the services are rendered between the members of the same family.

FOURTH DEPARTMENT, APRIL TERM, 1895.          [Vol. 86.

APPEAL by Clarisse M. Harrison, one of the legatees named in the will of Betsey Everts, deceased, from a decree of the Surrogate's Court of the county of Madison, entered in the Madison County Surrogate's Court on the 15th day of March, 1894, settling and allowing the accounts of James Stevenson and another, executors, etc., of Betsey Everts, deceased, as adjusted and filed, and directing the distribution of the assets.

*A. C. Phillips* and *F. A. Lyman*, for the appellant.

*John E. Smith*, for the respondents.

MERWIN, J. :

Betsey Everts died on the 16th of September, 1891, leaving a will bearing date November 4, 1889, in which, after providing for the payment of debts and expenses and devising to her son Henry and his wife a farm for life with remainder over to their daughter, and giving to her daughter, A. Flavilla Everts, the sum of $1,600, which is stated to have been already advanced to her, she then gave to her daughters, Mary E. Blair and Clarisse M. Harrison, each the sum of $1,600. The residuary legatees were the four children above named of the testatrix. The personal estate, according to the account of the executors, amounted to about the sum of $3,500, and, after the payment of debts and expenses, there was, according to the decree appealed from, the sum $3,022.16, applicable toward the payment of the legacies to Mrs. Blair and Mrs. Harrison, and one-half thereof was distributed to each.

Upon the accounting Mrs. Harrison claimed that, in addition to the amount charged in the account, the executors should be charged with a note of $1,000, made by Mrs. Jackson, and a United States bond for $500. She also objected to the allowance to the executors of an item in the account of $100 paid to A. F. Everts for care of her mother, and to the allowance of an individual claim of the executrix, Mrs. Blair, of $124 for care and attendance upon her mother for 124 days, from May 15 to September 16, 1891. The surrogate declined to charge the executors with either of the additional items of assets and allowed each of the claims for care. The correctness of the decision of the surrogate as to each of these four items is challenged upon the appeal.

It was shown that, at some time before her death, the testatrix owned a $1,000 note, made by Mrs. Jackson, and a $500 bond. It is not shown that either of these ever came into the possession of the executors, or that they were in the possession of the testatrix at the time of her death. There is evidence tending to show that the testatrix, a short time before her death, made a gift of the note to Mrs. Jackson, who is the daughter of Mrs. Blair, and that the bond was given by the testatrix to her daughter Flavilla. Upon an accounting, the affirmative of establishing more assets than are acknowledged by the inventory and account is with the party objecting, and it should be established with reasonable certainty and not left to mere conjecture or suspicion. (*Marre* v. *Ginochio*, 2 Bradf. 165; *Bainbridge* v. *McCullough*, 3 T. & C. 487; Redf. Surr. Pr. [5th ed.] 797.) No inventory had, in the present case, been filed previous to the accounting, but the appellant, about a year after the death, had a list of the property as claimed by the executors, and knew that the note and bond in question were not in it, but were claimed by the donees above referred to. No steps were taken to compel an inventory to be made. We are not prepared to say that the surrogate erred in holding, in substance, that a case was not made for charging the executors personally with the amount of the note and bond. No request was made for a direction to the executors to take legal proceedings to recover those items. Such a direction might have been given, according to the view taken of the power of the surrogate in *Matter of Underhill* (117 N. Y. 471).

The burden was on the contestant of impeaching the payment of the claim of A. Flavilla Everts. (*Boughton* v. *Flint*, 74 N. Y. 477; *Metzger* v. *Metzger*, 1 Bradf. 265; *Matter of Accounting of Frazer*, 92 N. Y. 239.) It was shown that the deceased lived with her daughter Flavilla, but we have no right, according to the case of *Ulrich* v. *Ulrich* (136 N. Y. 120), to presume as matter of law that there was no agreement that Flavilla should be paid for her services. The burden of proof being on the appellant, we find no good reason for disturbing the conclusion of the surrogate that the claim had not been shown to be invalid.

The individual claim of the executrix stands on a different basis. She is bound to establish her claim by legal evidence. (Code, § 2731; *Kyle* v. *Kyle*, 67 N. Y. 408.) The testatrix lived with her daughter

Flavilla and Mrs. Blair lived near them. The testatrix was an old lady, and on the 15th of May, 1891, she fell and broke her hip and died on the 16th of September, 1891. Mrs. Blair claims that she sat up with her mother every night from the time of her injury to her death, being 124 days. She testified that her mother was confined to her bed and unable to help herself, and required the services of a nurse night and day; that her sister Flavilla "generally took care of her during the day, and I generally took care of her during the nights; I set up with her one hundred twenty-four nights; it was worth one dollar per night. I was obliged to leave my own home to take care of her nights." There was evidence that the wife of the son Henry helped to take care of the mother, was there, when she could be, and some of the time stayed nights; also, that Mrs. Harrison visited her mother during the summer as often as she could; was there several times, and sat up nights; also, that the granddaughter, Mrs. Jackson, was at her mother's eleven weeks during that summer, and came over frequently to Flavilla's and helped. There is also evidence that at the time the mother came to live with her daughter Flavilla, Mrs. Blair repeatedly stated that she wanted her mother to live near her so that if she was sick she could help take care of her and repay her for what the mother had done for her; that after her mother's death Mrs. Blair stated that her mother said she wanted her property equally divided between her children. These statements Mrs. Blair does not seem to deny. It was also shown that the mother told her son Henry repeatedly that she wanted her property equally divided between her children. The gift to Mrs. Jackson of the $1,000 note was claimed to have been made during the sickness of the testatrix.

There is no evidence of any agreement between Mrs. Blair and her mother that Mrs. Blair should be paid for her services, or that there was any mutual understanding to that effect. The mere fact that one person labors for another is ordinarily sufficient to sustain the finding of an implied contract to pay therefor. But this rule does not apply when the services are rendered between members of the same family. In *Williams* v. *Hutchinson* (3 N. Y. 312, 318), it is said: "We find other motives than the desire of gain which may prompt the exchange of mutual benefits between them, and hence, no right of action will accrue to either party, although the services

or benefits received may be very valuable. And this does not so much depend upon an implied contract that the services are to be gratuitous, as upon the absence of any contract or promise that a reward should be paid."

The general rule is not disputed by the counsel for the respondents, but the claim is that it is not applicable here because Mrs. Blair went from her own home to attend upon her mother, and, therefore, should not be deemed to be a member of the same family within the rule. Reference is made to the case of *Moore* v. *Moore* (21 How. Pr. 211), where a son who did not live with the testator made a claim for professional services as a physician, and at page 223 it is said : " He places his right to recover on showing that he rendered meritorious and valuable services which were accepted by the testator. Ordinarily, from the fact of rendition and acceptance of services beneficent in their nature, the law will imply a promise to pay what the services are reasonably worth. This implication may not be repelled wholly by the fact that the service is rendered to a parent by a son of full age; but the legal presumption of an obligation to pay is less strong when the relation of parent and child exists, than in the case of dealing between persons not bound to each other. If, to the relationship, be added other circumstances tending to show, as a matter of fact, that the services were gratuitously rendered, and without any expectation at the time on either side that payment was to be made, the law will not imply a contract for compensation." In *Markey* v. *Brewster* (10 Hun, 16) there was a promise to pay. In *Matter of Wells* (4 N. Y. St. Repr. 878), a granddaughter, at the express request of the testator, left her own home and performed services for the testator. The other cases cited do not seem to reach the present case.

In Wood's Master and Servant (§ 72) the rule is stated to be that " in all cases where compensation is claimed for services rendered for near relatives, as a father, brother, grandfather, etc., the law will not imply a promise, and no recovery can be had unless an express contract or circumstances equivalent thereto is shown." In 2 Parsons on Contracts (8th ed.), 49, it is said : " In general, wherever service is rendered and received, a contract of hiring, or an obligation to pay, will be presumed. But it is said not to be so where the service is ren-

dered to the parent or uncle, or other near relative of the party, on the ground that the law regards such services as acts of gratuitous kindness and affection." In *Burgess* v. *Burgess* (109 Penn. St. 316) it is said : "The law is well settled that between parent and child there can be no recovery for services or maintenance unless upon proof of an express contract to pay therefor, and to establish such a contract requires the production of direct, clear and positive evidence." In *Zimmerman* v. *Zimmerman* (129 Penn. St. 229) the same doctrine was applied, even though at the time of rendering the service the son was not a member of his father's family, and it was held that to support a claim for nursing or other services, such as filial duty or common humanity require a son to render, there must be better proof than loose declarations of gratitude and of an intention to compensate made by a father in his last sickness.

It is at least doubtful whether under the circumstances of this case Mrs. Blair, as to her claim, is in a better position than a member of the family would be. The performance of a filial duty should not be placed on a pecuniary basis. Nor should it be said that a child, though living away from home, if he performs a service for his sick parent, should be entitled, as matter of law, to compensation as upon the obligation of a contract.

But at most there was only the presumption of a promise to pay, and the question then is whether upon the circumstances here shown, including the absence of any promise, the presumption is overthrown ( *Williams* v. *Finch*, 2 Barb. 208). All of the children seemed to have aided in caring for the mother. The mother expected that her property would be equally divided among her children. Still she had given her daughter Flavilla, with whom she lived, and who had the main burden of her sickness, an additional $500. She gave the daughter of Mrs. Blair $1,000, and this gift Mrs. Blair was active in having consummated during the sickness of her mother. This was indirectly for Mrs. Blair's benefit, and was a large portion of the estate. It is not probable that the mother expected to further compensate Mrs. Blair for her services. If she had, it would naturally have been so distinctly understood.

The case is here upon the facts (Code, § 2586), and we are of the opinion that the evidence does not justify the allowance of the claim of Mrs. Blair.

It follows that the decree should be modified by disallowing the claim of Mrs. Blair and striking the amount thereof from the allowances made to the executors, so that the sum to be distributed to the legatees, Mary E. Blair and Clarisse M. Harrison, will be the sum of $3,146.16 instead of the sum of $3,022.16, and giving to each on her legacy the sum of $1,573.08, and as modified the decree should be affirmed, without costs of this appeal to either party.

HARDIN, P. J., and MARTIN, J., concurred.

Decree modified as stated in the opinion, and as modified affirmed without costs of this appeal to either party.