In re MYERS.

(Supreme Court, Appellate Division, First Department. December 30, 1898.)

1. EXECUTORS—POLICIES—ACCOUNTING—FINDING.

The attorney of the executrix testified that certain life policies were payable to the estate, and that all the policies were payable to the widow (executrix) and children. The policies payable to the estate were properly charged in the executrix's account, and it was shown that two days before she made a large deposit in bank as executrix she had received the same sum from the policies payable to her individually and to her children. *Held* insufficient to sustain a finding that this sum belonged to the estate.

2. SAME—ACCOUNTING—FINDING.

Where of three different dates given as the date of a testator's death the last appeared to be the only one positively testified to, a finding charging the executrix with deposits in the testator's name on the first of the dates was not justified.

3. SAME—CLAIMS—PAYMENT—ALLOWANCE—EVIDENCE.

Claims were presented by persons claiming to be creditors of the testator, and the evidence showed that the claimants had performed services for the estate. The executrix examined the claims, was satisfied of their correctness, and paid them. *Held* sufficient to make out a prima facie case entitling her to credit for the payments.

Appeal from surrogate's court, New York county.

Judicial settlement of the account of Bertha Koehler Myers, as executrix of Hermann Koehler, deceased. There was a decree settling the account, and the executrix appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and INGRAHAM, JJ.

Emanuel J. Myers, for appellant.
Eugene H. Hatch, for respondent.

INGRAHAM, J. The respondent, Eliza Davis, having recovered a judgment against the appellant, as executrix of Hermann Koehler, filed a petition in the surrogate's court for leave to issue execution on her judgment against the executrix, and upon that application she was ordered to file an intermediate account. Pursuant to such order, an intermediate account was filed, to which the respondent filed objections. Subsequently a proceeding for a voluntary accounting by the executrix was commenced, when the two proceedings were consolidated, and the surrogate referred the accounting to a referee. The referee reported that, in addition to the sum with which the executrix charged herself in her account, she should be charged with the sum of $17,542.32, which had been deposited in the Bank of the Metropolis to the credit of the executrix, and also with $3,056.09, a sum on deposit in the Bank of the Metropolis to the credit of the decedent in April, and deposits subsequently credited to that account, amounting to the sum of $1,230,—a total of $4,286.09; and that she should

also be charged with the sum of $805.72 on deposit on April 9th in the Bowery Bank to the credit of the decedent, and deposits subsequently credited to that account, amounting to the sum of $5,545,—a total of $6,350.72. The referee also reported that in the account of the indebtedness of the decedent certain payments made by the executrix for debts of the decedent should not be allowed, because the executrix failed to prove the propriety of such payments, and the account as finally settled by the report of the referee charged the executrix with assets amounting to $71,362.93, instead of $43,180.80, with which she had charged herself in her account, and held that each creditor was entitled to .5747 of his claim. The executrix excepted to the report of the referee. The exceptions, having been brought on before the surrogate, were overruled, and the referee's report confirmed, except in some minor particulars, which resulted in decreeing that each creditor was entitled to .5829 of his claim. The decree further provided for the distribution of the estate among the general creditors, allowing to the respondent her costs, refusing to allow the executrix any commissions, and directing the payment to the respondent on account of her claim of the sum of $2,720.53 as her pro rata share of the balance remaining in the hands of the executrix. We do not think that the evidence sustained the finding of the referee that the sum of $17,542.32, deposited in the Bank of the Metropolis, was money of the estate, unaccounted for. The executrix claims that a part of such moneys was the proceeds of insurance on the life of the deceased, payable to her and her children. The only evidence to justify the finding that the executrix should be charged with this sum of money was the fact that it had been deposited in the Bank of the Metropolis in the name of Bertha Koehler, as executrix of Hermann Koehler. On the trial, Mr. Myers, the counsel who represented the executrix, testified expressly that the life insurance which was payable to the estate consisted of one policy in the Mutual Life Insurance Company, and two in the Mutual Reserve Association, both in the city of New York. These three policies were introduced in evidence, and the amounts paid upon them were included in the account; one in the Mutual Life Insurance Company, for $10,000, the proceeds of which were received by the executrix, and two policies in the Mutual Reserve Association, one for $10,000, and the other for $5,000, also paid to the executrix, and included within the $43,180.80 with which she charges herself in her account. The witness then testified that the other insurance upon the life of the testator was all in favor of his wife and children. This testimony was received without objection. The attorney further testified that the only moneys which came into the possession of the executrix as such were the life insurance moneys from the Mutual Life and Mutual Reserve and the $18,000 paid to her, as guardian, for rent of the brewery property. The representative of the Mutual Life Insurance Company was called, who produced two policies on the life of Hermann Koehler. One of the policies, for $20,-000, was payable to Bertha Koehler, wife of Hermann Koehler, and his children; and he testified that the proceeds of this policy were paid by the company to Bertha Koehler individually and as guardian for the children. He also produced the other policy, for $10,000, which

was paid to Bertha Koehler as executrix, the proceeds of which were included in the amount for which Bertha Koehler charges herself in the account. It was also proved that this policy had been assigned to the Bank of the Metropolis by Hermann Koehler before his death, and that Bertha Koehler received that money, and turned it over to the Bank of the Metropolis, which also signed a receipt to the insurance company for it. There was one policy for $20,000 upon the life of Hermann Koehler in the Mutual Life Insurance Company, payable to the testator's widow and her children. That certainly was not a part of the testator's estate for which the executrix should be charged. It further appeared from the evidence of the officer of the Mutual Life Insurance Company that on this policy there was received by Bertha Koehler $21,092.40 on June 7, 1889, and that on the same day the policy of insurance for $10,000 on the life of Hermann Koehler, in favor of himself, and which was assigned to the Bank of the Metropolis, was paid to Bertha Koehler, the amount paid on that policy being $10,180.80. In the account of the Bank of the Metropolis with Bertha Koehler as executrix it appears that on that same day (June 7, 1889) this latter sum was deposited by her to the credit of the estate, and that on June 17, 1889, she paid to the bank, on account of the indebtedness of Hermann Koehler which this policy had been assigned to the bank to secure, the sum of $10,248. It also appeared that on August 10, 1889, the two policies of the Mutual Reserve Fund Association were paid to the executrix, aggregating $15,000, and on August 12, 1889, there is a credit to the estate of Hermann Koehler with the Bank of the Metropolis of $15,000. It is quite evident that this credit to the executrix was the proceeds of these two policies. There are three other credits to the account of the executrix, aggregating $11,199.93. In the third finding of fact the learned referee has charged against the executrix the sum of $17,542.32. Upon the testimony admitted without objection, and undisputed, it appeared that the executrix did deposit in this bank the money which she had received from the life insurance company upon insurance policies on the life of the testator which were payable to her and her children. As to the sums on deposit in the Bank of the Metropolis and the Bowery Bank on April 9, 1889, I do not think that on the evidence the report of the referee can be sustained.

Three different days are mentioned in the record as the date of the testator's death. It does not appear that there was any evidence that the testator died on April 9, 1889. When a witness named Hamilton was being examined, the question was asked, "When did Mr. Koehler die?" and counsel for the executrix said that he died on April 9, 1889. Mr. Rogers, connected with the Bank of the Metropolis, in speaking of the testator's account in the Bank of the Metropolis, testified that at the time of his death, on April 10, 1889, it was $3,056.09. Mr. Koehler, the brother of the testator, testified that the testator died on April 14th. It was stated on the argument by the counsel for the executrix that the real date of the death of the testator was April 14, 1889, and it would seem that this was the only date testified to. The learned referee charged the executrix with the amount of money on deposit in these two banks on April 9, 1889.

adding to that the amount of deposits which were made to the credit of the account subsequent to April 9th and before April 15th, but disallowing all of the drafts which the banks had paid on these accounts between April 9th and April 14th.     There was no proof that the executrix received any of these sums from the banks.     The evidence is uncontradicted that the testator was, at the time of his death, indebted to both of these banks in a large amount, which indebtedness this executrix paid largely out of her own money, and which was no part of the estate.     None of this evidence is disputed, and we do not think the learned referee was justified in charging to the executrix the amount of these deposits.     If the testator died on April 14th, then certainly the money which had been paid upon these accounts by direction of the testator prior to April 14th should be credited, and nothing more could be charged against the executrix than the balance remaining in the banks on April 14th, when the testator died.

There were several claims against the estate which were paid by the executrix, and which the learned referee disallowed, because, as he reports, the propriety of these payments was not proved.     We think these amounts should have been allowed as payments by the executrix of claims against the estate.     These claims were presented by persons claiming to be creditors of the testator.     The evidence in each case was that the person presenting the claims had performed services for the estate; that the executrix caused these claims to be examined, and, having been satisfied of their correctness, paid them. We think there was sufficient to make out a prima facie case for allowing the executrix the amount of such claims.     There is no doubt but that the claims were actually made against the testator's estate, and that they were paid by the executrix as valid subsisting claims against the estate; and upon such an accounting we do not understand that an executrix is bound to prove anything more than that. She is not bound to establish on her accounting by evidence that would sustain a verdict against her if she had disputed the claim that the claims were payable by the testator.     There was a large amount of evidence taken on this accounting.     Much of it was incompetent, but it was not objected to, and the proceedings seem to have been quite informal.     The difficulties which have arisen have been because of the manner in which the counsel tried the case, and this is another illustration of the necessity, in proceedings of this kind, that the rules of evidence should be strictly adhered to, and the case formally and properly tried.

The decree of the surrogate must be reversed, and the case sent back to the surrogate's court, with directions to order a new hearing upon the objections to the account presented; with costs to the appellant to abide the event.     All concur.