Matter of the Judicial Settlement of the Accounts of Proceedings of CYRENUS P. DORLAND and JOHN E. HAYES, as Executors, etc., of HENRY S. AIKIN, Deceased.

(Surrogate's Court, Bronx County, May, 1917.)

Decedents' estates — claims against — executors and administrators — rejection of claims — evidence — wills — annuities — trusts — Code Civ. Pro. § 2677.

After the death of decedent, who had bequeathed to his executors a substantial sum in trust to purchase an annuity upon the life of a person named, the annuitant presented to one of the executors two documents, a bill of $5,000 for services

rendered, and a paper referred to as a letter of decedent purporting to explain said bill and expressing the wish that his executors would pay it in cash without causing the annuitant any annoyance or expense. One of the executors objected to the claim after it had been allowed by his co-executor. Upon the accounting, objections to the payment of the claim were filed on the ground, (1), that the claim was not verified as required by law, and, (2) that it had been fraudulently or negligently allowed by one of the executors. Upon consideration of the evidence and in sustaining the objections to the allowance to the claim, *held:*

That although the executors had the right to require the presentation of the claim as required by section 2677 of the Code of Civil Procedure, yet as neither of them raised any objection on the ground that the claim was unverified, but both considered it and acted upon it without requiring the affidavit of the claimant, any defect in the form of presentation was waived and could not be urged by the contestant at the hearing.

That executors are agents to settle an estate and where there are two or more of them they are regarded in law as one person representing the testator, and the acts of one involving ministerial duties only are the acts of all; that the payment or allowance of a claim is an act of a ministerial nature and hence the allowance of the claim by one executor binds the estate; that such allowance establishes its accuracy *prima facie* without further proof and could only be defeated by proof that it was fraudulent or negligent; and that upon that issue the burden of proof was upon the contestants.

That the claims against the estates of decedents must be carefully scrutinized and must be established by clear and convincing evidence; that this salutary rule of law would be nullified and rendered of no effect in this estate if the allowance of one executor under the circumstances stated were permitted to stand; that the court was limited to the question whether or not the claim was allowed fraudulently or negligently and that the allowance of the claim under conditions stated, while perhaps due to an honest belief that the executor was in fact carrying out the wishes of his dead friend and with no fraudulent intent, nevertheless establishes the liability of the estate for a large amount of money without an examination and investigation which prudence and a due regard for the rights of the persons interested in the estate would seem to have required;

Surrogate's Court, Bronx County, May, 1917.   [Vol. 100.

That it was not the duty of the claimant to prove the services rendered, and she had a right to rely upon the allowance by one co-executor until it was rendered of no effect by some mandate of the court; and that the claimant upon the entry of the decree in this matter should stand in the same position as though her claim had then been rejected by the executors.

PROCEEDINGS on a contested claim in an accounting proceeding.

James J. Lewis, for claimant.

W. E. Hoysradt, for Young Men's Christian Association of Poughkeepsie.

John B. Grubb, for Bowne Memorial Hospital of Poughkeepsie.

John Boyle, Jr., for State Comptroller.

SCHULZ, S.   The decedent left a last will and testament dated November 19, 1913, wherein he nominated two executors, made bequests to his sister and to other persons therein named and left his residuary estate to the Young Men's Christian Association of Poughkeepsie, N. Y., and to the Samuel W. Bowne Memorial Hospital of Poughkeepsie, N. Y.   Among the provisions contained in the document in question was one by which the decedent gave and bequeathed to his executors the sum of $9,000 in cash, in trust, to use the same in purchasing an annuity upon the life of one Mary Forsythe, the income thereof to be paid to her quarterly during her natural life and the annuity bond to be delivered to her to hold the same and collect the interest thereon.   He also provided that the executors pay to Mary Forsythe the sum of $60 per

Misc.]     Surrogate's Court, Bronx County, May, 1917.

month commencing immediately upon his decease and until she received the first installment of her annuity.

After the death of the decedent and upon an occasion when the executors were examining the contents of a safe deposit box rented by the decedent, the said Mary Forsythe, hereinafter referred to as the claimant, presented two documents, one being the instrument hereinafter referred to as the bill and which was in form as follows:

*July* 3, 1915.

" Received From *Estate of Henry S. Aikin deceased, Five thousand Dollars      for care given covering a period of thirty three yrs.*

" *Paid by Executors of said Henry S. Aikin deceased*

" *$5,000$\frac{00}{100}$.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ."

and the other being the instrument hereinafter referred to as the letter of the decedent which was in form as follows:

" New York, *July* 5, 1915.

" To my Executors in State of New York:

" This letter explains a bill held by Mrs. Mary Forsyth given to her by me, Henry S. Aikin, to collect from my Estate for my care as stated in bill.  This care consists of nursing night and day through three operations I had performed on me; also by knowing what remedies to use in two emergency cases, which saved my life.  Two of my physicians agreed with me that boarding at Mrs. Forsyth's and the continued care have prolonged my life.  For these services she has never received any remuneration.  No one else has ever cared for me, nor has any claim for the same been made.  This covered a period of over thirty-four years.

"I trust my executors will pay this bill in cash without causing Mrs. Forsyth any annoyance or extra expense. This bill is outside of any other rememberance I may leave to said Mrs. Mary Forsyth.

"(Signed)    H. S. AIKIN
"  2074 Vyse Ave.
"Amt  $5,000.                                   Bronx N Y "

Upon that occasion, one of the executors in effect stated that he would not pay the claim, while the other apparently favored its payment.

Subsequently the one who was favorably inclined to the payment of the claim referred the claimant to an attorney who thereafter wrote him a letter attaching the documents in question and on the 14th day of January, 1916, this executor signed an approval and allowance of the claim upon the back of the attorney's letter and forwarded the same with the bill and the alleged letter of the decedent, to his co-executor. The latter rejected the claim in writing on the 14th day of March, 1916, and it has not as yet been paid.

The executors are now attempting to judicially settle their accounts and therein state that the claim in question has been admitted by one executor and rejected by the other. The two residuary legatees named in the will and who would be affected by the payment of the claim in question have filed answers objecting to the allowance, approval or payment of the claim and among the issues raised and which I deem of importance are (a) that the claim was not verified as required by law; (b) that the claim in so far as it has been approved or allowed by one of the executors has been fraudulently or negligently allowed. A citation was duly issued to the claimant who appeared by attorney upon the return day thereof and a hearing was thereafter had.

At the outset of the hearing, the residuary legatees claimed that the burden of proof was upon the claimant, whereas the claimant made a contrary contention.

On the first occasion that the alleged claim was made known to the executors neither one took any formal action with regard thereto, and it was not rejected in the manner provided by law, *i. e.*, in writing (Code Civ. Pro. § 2681); hence there was no rejection or approval of the claim up to the 14th day of January, 1916, which was the day when the same was presented to one of the executors, and the indorsement of his approval made thereon, as hereinbefore stated. The claim was not verified when thus presented and undoubtedly the executors had the right to require "the affidavit of the claimant that the claim is justly due, that no payments have been made thereon, and that there are no offsets against the same to the knowledge of the claimant." Code Civ. Pro. § 2677. Neither one, however, urged this as a requirement, and raised no objection to it on the ground that it was unverified, but, on the contrary, both considered it and acted upon it without requiring the affidavit of the claimant. In my opinion this possible requirement and any defect in the method of presentation were thereby waived by the executors and cannot now be urged by these contestants. *Merino* v. *Munoz,* 99 App. Div. 201.

It is well settled that executors are agents to settle an estate and that where there are two or more of them they are regarded in law as one person representing the testator, and the acts of one involving ministerial duties only are the acts of all. *Murray* v. *Blatchford,* 1 Wend. 583, 616; *Barry* v. *Lambert,* 98 N. Y. 300, 308; *Chambers* v. *Cruikshank,* 5 Dem. 414, 419, and cases cited; *Matter of Bradley,* 25 Misc. Rep. 261, 263; *Matter of Ehret,* 70 id. 576. I do not

16

read *Matter of Ehret, supra,* cited by the contestants, as being to the contrary. There it was held that where the acts call for the exercise of discretion and judgment the concurrence of all is necessary. The payment or allowance of a claim is an act of a ministerial nature (see cases cited, *supra*) and hence the allowance of a claim by one executor binds the estate. It establishes its accuracy *prima facie* without further proof. *McNulty* v. *Hurd,* 72 N. Y. 518; *Lambert* v. *Craft,* 98 id. 342; *Matter of Warrin,* 56 App. Div. 414; *Matter of Prince,* 56 Misc. Rep. 222.

Two months before the rejection of the claim by one of the executors the other had already allowed it. It seems to me to follow that if the executor first acting had the power to bind his associate and that an allowance by him established the claim, the rejection by the other executor was of no effect. The claim had already been established and could only be defeated by proof that its allowance was fraudulent or negligent. Code Civ. Pro. § 2680. Upon that issue, the burden of proof was upon the contestants and I so held upon the hearing.

The claimant bases her claim upon the bill and the letter hereinbefore set forth. The former consisted of a printed form upon which the words " received from " and " dollars " were printed, and the remaining words were handwritten; the latter was in typewriting, except the signature and the address at the foot thereof and the abbreviation, sign and figures "Amt $5,000 " in the lower left hand corner and below the signature, which were in handwriting. An expert witness called by the contestants gave it as his opinion that the signature to the letter had been written over a lead-pencil signature and was not in the handwriting of the decedent. He also testified that the writing upon the bill was not in the handwriting of

the decedent and that, in his opinion, the bill had been written by the same person who had written certain exhibits which, it was conceded, were written by the claimant. Several witnesses called by the claimant testified that the signature to the letter was in the handwriting of the decedent, but none of these witnesses, with the possible exception of the approving executor, had seen the decedent write for at least ten years before that time.

In the letter of the attorney which accompanied the alleged letter of the decedent and the bill when they were sent to the executor who approved the claim, the bill was referred to as being in the handwriting of the decedent and in the alleged letter of the decedent it was referred to as a bill given to her by the decedent. After the testimony of the expert had been given to the effect that the bill was in the handwriting of the claimant, her attorney admitted this to be the fact and stated that he was in error when he wrote that it was in the decedent's handwriting. The expert was cross-examined on behalf of the claimant as to his evidence to the effect that the ink signature was written over pencil writing; but subsequently it was admitted by the claimant that the letter was signed in lead pencil when she first saw it, thus showing that the conclusions of the expert were correct.

With nothing before him but the bill, the alleged letter of the decedent and the letter of the attorney and without requiring a verification of the claim by the oath of the claimant, the one executor approved of and allowed the bill. He justifies such allowance by stating that he knew the claimant had taken care of the decedent; that the decedent begged him to act in his stead toward the claimant when he was dead and said she had done more for him than any one on earth but his mother; that he knew that the decedent

had lived at the home of the claimant for very many years; that he knew of the good care that the claimant had taken of the decedent and that the material facts in the letter were true and that he knew more about it than the executor who disallowed the claim; but he admits that the decedent did not speak to him about the claimant after the date of the will, and in this document it will be observed that a substantial provision is made in favor of the claimant. It also appears that the decedent paid board during the time he lived in the home of the claimant and that after his death the executors paid a small balance which was still due for board. He admits that he signed the approval when the letter and bill were sent to him in Chicago, and that he did so without making any investigation.

As before stated, the bill was referred to in the attorney's letter as being in the handwriting of the decedent; yet this executor did not discover that this statement was an error; nor was his attention attracted by the statement in the alleged letter of the decedent that it explained a bill " given to her (the claimant) by me (the decedent)." Had he examined the letter and the bill carefully and noted the statement in the attorney's letter, it would seem that inquiry as to this statement should have suggested itself to him. The alleged letter of the decedent contained no statement of any amount other than the abbreviation, sign and figures "Amt $5,000." in the lower left hand corner, and below the signature. These the expert, on a superficial examination, stated, in his opinion, were not written at the time the signature was written. The amount claimed was large in view of the size of the estate, and the body of the letter specifically referred to a bill, and yet the executor states that he did not pay any attention to the bill;

that he regarded the letter as an order from the decedent to pay the bill.

It is well settled that claims against the estates of decedents must be carefully scrutinized and must be established by clear and convincing evidence. *Kearney* v. *McKeon,* 85 N. Y. 136; *Van Slooten* v. *Wheeler,* 140 id. 624; *Holt* v. *Tuite,* 188 id. 17; *Roberge* v. *Bonner,* 94 App. Div. 342; affd., 185 N. Y. 265. It seems to me that this salutary rule of law would be nullified and rendered of no effect in this estate, if the allowance of one executor made under the circumstances stated were permitted to stand.

I am limited in my consideration to the question whether or not the claim was allowed fraudulently or negligently. Code Civ. Pro. § 2680. While I believe that the executor who allowed the claim did not intend to defraud the estate, I cannot escape the conviction that he was negligent in not investigating the claim in question more carefully than he did before allowing the same. If he had done so, and if in fact he knew the handwriting of the decedent, he would have discovered that the bill was not in the decedent's handwriting, and this should have caused him to examine very carefully into the matter before allowing this unverified claim. His allowance of the claim under the conditions above detailed, while perhaps due to an honest belief that he was thereby in truth and in fact carrying out the wishes of his dead friend, and with no fraudulent intent on his part, nevertheless established the liability of the estate for a relatively large amount of money without an examination and investigation which prudence and a due regard for the rights of the persons interested in the estate would seem to have required and was in my opinion negligent.

Surrogate's Court, Bronx County, May, 1917.    [Vol. 100.

It follows that the objections to the allowance of the claim must be sustained.

The claimant did not attempt to prove the services rendered by her, and in view of the allowance of the claim I do not believe that it was her duty so to do. She relied upon that allowance as she had a right to do until it was rendered of no effect by some mandate of the court. Nor do I think any finding should at this time be made as to the authenticity of the signature to the alleged letter of the decedent. In my opinion the claimant should upon the entry of the decree in this matter stand in the same position as though her claim had then been rejected by the executors. This I believe to be in accordance with the provisions of section 2680 of the Code of Civil Procedure.

Decreed accordingly.