In the Matter of the Judicial Settlement of the Account of Joseph H. Gilmore as Executor, etc., of Julia A. Wilson, Late of Jefferson, Schoharie County, Deceased.

Surrogate's Court, Schoharie County, June, 1926.

**Executors and administrators — accounting — validity of claim against estate allowed by executor is prima facie established under Surrogate's Court Act, § 210 — executor's action in paying claim cannot be set aside in absence of evidence showing debt was fraudulently or negligently allowed — payment of interest in excess of amount recited in claim cannot be made basis for reopening case — sum of $100 in cash not appearing in inventory cannot be charged to executor — objection to account upon theory that furniture is to be accounted for dismissed — executor required to prove account as to certain oil paintings.**

Whenever a claim has been presented to and allowed by an executor, the validity of the claim is, pursuant to section 210 of the Surrogate's Court Act, *prima facie* established in favor of the party presenting it, and the executor's action cannot be set aside or reversed unless an adverse party shows that the claim or debt was fraudulently or negligently allowed or paid, or that a judgment on the claim was obtained by fraud, negligence or collusion.

Accordingly, on proceedings for the judicial settlement of the accounts of the executor herein, an objection to the allowance by the executor of a claim for board, care and nursing of the testatrix amounting to $2,800 is without warrant in the absence of proof that the claim was fraudulently or negligently allowed and paid by the executor. However, the matter of the payment of $340 in excess of the amount set out in the claim as presented, which now appears to have been paid as interest on said claim, is a separate question and cannot be made the basis for the reopening of the accounting proceedings, for the purpose of making proof by the executor on further cross-examination that said sum was in fact paid as interest on the demand of the claimant.

The executor cannot be charged with the sum of $100 in cash alleged to have been in a bureau drawer, where the inventory which was taken after due notice pursuant to statute does not include the item.

An objection that there is a small amount of furniture to be accounted for must be dismissed in the absence of proof of such claim; but the executor should be put to his proof on the question of certain paintings.

PROCEEDING for judicial settlement of accounts of executor.

*Leland C. Jones* [*Herrick McClenthen* of counsel], for the petitioner.

*Wallace H. Sidney*, for George H. Nichols and another and subsequently for the administrator of George H. Nichols.

*R. D. Brosmine* [*Leland C. Jones* of counsel], for Kate B. O'Connor, executrix.

*Leland C. Jones*, for Board of Home Missions of Presbyterian Church.

BEEKMAN, S.    Answers containing objections were filed by George H. Nichols and Vera Golden. All the objections set up in both answers have been withdrawn except objections Nos. 2, 3, 4, 5, 6 and 7. The principal objection was to the payment by the executor of the claim of Lulu Nichols for the board and care of the testatrix from June 26, 1917, to June 4, 1920, amounting to $2,800. The accounts show that the executor paid to said Lulu G. Nichols on account for board, care and nursing of the decedent $220 in December, 1920; $400 March 22, 1922, and $2,520 June 16, 1922. After the objectors had called several witnesses, including Gilmore, the executor, and rested, the executor moved for a dismissal of all the objections on the ground that the objectors had failed to produce any proof whatsoever to support their objections; that the objectors had failed to sustain the burden of proof.

The claim on file is in writing for $2,800. It does not specifically or expressly demand interest. It states the different amounts per week for certain periods. The claim as presented must, of course, be understood to represent the board and care — a transaction before the testatrix died. The claim as stated by the claimant with her affidavit attached purports to state concretely what the services were worth or what was the agreed price. As to whether

interest is to be allowed on the same and if so, from what date, is another question to be determined as a matter of law, upon the facts as they may develop.

The executor has been called by the contestants, examined as a part of the contestants' case and no inquiry was made of him as to whether he paid interest on the claim or as to whether interest was demanded on the claim. The executor's attorneys now ask to be permitted to cross-examine the executor as to something about which he was not examined in chief and after the contestant has rested. The way the court views the matter is simply whether the contestants have made out a showing that this claim for $2,800 was fraudulently or negligently allowed and paid by the executor.

After the filing of briefs on the question raised by the petitioner's motions to dismiss the objections, the court discovered that the executor stated in his accounts that the executor had paid Lulu Nichols on account $3,140, which was $340 in excess of the amount stated in the claim presented by her and called the attention of all parties to that fact, and the counsel for the executor stated that he had not before discovered that the claims filed by Lulu Nichols did not on their face claim interest, and states that he is informed that the $340 was paid as interest and moved to reopen the case for the purpose of making proof by the executor on further *cross-examination* that the payment of said sum of $340 was in fact paid as interest on the demand of Lulu Nichols.

The court is of the opinion that the interest is a separate matter, and as to whether interest, or how much interest is payable, or from what dates payable, is a part of the petitioner's case, to establish and not a part of the cross-examination of the contestants' witness who was not interrogated as to interest or from what date or dates computed or paid, interest not being mentioned specifically in the written claim, in the accounts of the executor or in his testimony as a witness called by the contestants.

Hence, the court's denial of the motion to reopen the case for the purpose of the further cross-examination of the executor on the question of interest, but the executor at the proper time may on his part offer such evidence as he may be advised.

On the question of the motion of the executor for the dismissal of the objections:

Section 210 of the Surrogate's Court Act is as follows: " Whenever upon any accounting or judicial settlement of an account, the executor or administrator admits and allows a claim or debt against the deceased, other than his own claim, or has theretofore in writing admitted or allowed such a claim or debt, the validity of such

claim or debt shall be thereby established. When such a claim or debt has been so admitted or allowed, or a judgment against the executor or administrator has been obtained, whether either has been paid or not, any party adversely affected thereby may file objections thereto and may show that the claim or debt was fraudulently or negligently allowed, or paid, or that the judgment was obtained by fraud, negligence or collusion."

When the Code was revised in 1914, the revisers made the following note under this section: "This new section makes the allowance of the claim of some value, and fixes its standing as a valid claim unless proof is made as in a case where a judgment has been obtained."

In *Matter of Swiller* (205 App. Div. 302) the court, in referring to the rule as stated by Heaton in his work on Surrogates' Courts, that an executor cannot testify to transactions with his testator, in defending his account from attack by residuary legatees, says: "While I cannot agree with the reasoning of the courts in some of the * * * cases [cited by Heaton], the recognized rule seems to be as stated by Heaton. In most cases the personal representative of the deceased is the widow, husband or a child of the deceased, and ordinarily the person most familiar with the testator's affairs. It, therefore, follows that the executor is generally the one who has most intimate knowledge concerning the claims which are presented. If an executor knows positively that a claim is just and meritorious and happens to be the only one having such knowledge he apparently is not safe in paying the claim, for thereby he will be closing his mouth and prevent the proof thereof in case of contest." Taking into consideration that the rule is as stated by Heaton, the reason for the provision in section 210 of the Surrogate's Court Act is very apparent. The law proceeds upon the theory that men are honest, and that an executor who is selected by the testator as the one person out of all his next of kin or acquaintance whom he would trust, will honestly and diligently scrutinize and examine claims presented against his estate, and, therefore, section 210 says that when the claim has been allowed, the validity of the claim shall be thereby established, and that the executor's action shall not be reversed or upset, unless an adverse party shows that the claim or debt was fraudulently or negligently allowed or paid, or that a judgment on the claim was obtained by fraud, negligence or collusion.

In *Matter of Herrington* (73 Misc. 182) the court says: " Every representative of an estate, soon after he enters upon the discharge of his duties, must determine whether claims made against the deceased are honest and valid claims, and whether debts apparently

due the deceased are actually due and the true and correct amount thereof. To do this he must make careful investigation in each case, and necessarily a large part of the information he is able to get must come from the creditor or debtor himself. If, after making such honest inquiry, he is satisfied that a certain debt is due from the deceased, he should pay it; or, if the deceased had a valid claim against the person, he should collect the amount due and release the debtor. He should not, in ordinary cases, take the position that the true facts will be difficult or impossible of proof under section 829 of the Code of Civil Procedure and put either of such parties to his legal proof. It is the duty of the representative to settle the affairs of the estate; and he may settle or compromise claims for or against the estate, and a settlement made by him can be set aside only upon proof of bad faith or fraud."

If, upon mere conjecture and suspicion, the allowance of a claim by an executor could be set aside, or if, in every case the executor could be compelled later in court to prove affirmatively the foundation of the claim and to marshal all the evidence upon which he acted in allowing and paying the claim, thereby leaving him subject to the contingency of his necessary witnesses being absent or dying before the final settlement of his accounts came on, no claims of creditors could safely be paid before the final settlement or an adjudication by the court, or the proceeding for judicial settlement. This would result in great confusion in the settlement of estates and the working of great injustice in many cases. Furthermore, it is well known by everyone who has had experience in estates that very frequently the executor was familiar with the affairs of the testator before he died and received from the testator's own lips, in many cases, information in relation to the very debts and matters upon which the executor will be compelled to act after the probate of the will, and well knows that honesty and fair dealing justifies their payment. But if he is subject to the wanton attack of a litigious and unreasonable residuary legatee, few executors would consent to discharge the duties of that office. Therefore, the rule of law has long been recognized that the burden of proving fraud, negligence, collusion and bad faith on the part of the executor, must be borne by the objector. That is, the objector must prove facts and actual circumstances and cannot rely on speculation or detached events or transactions which may give rise to mere speculation.

One of the leading cases frequently cited is *Matter of Warrin* (56 App. Div. 414), in which the court says: " Whenever a claim is presented to, and allowed by, an administrator, it *prima facie* establishes the validity of the claim in favor of the party presenting

it. * * * The allowance of it is a determination that it is a valid and subsisting claim against the estate, and entitled to share in the distribution of the proceeds of the estate. It is just as effective for this purpose, unless disproved, as a judgment of a court of competent jurisdiction. Its validity can only thereafter be challenged upon the ground that the claim, or some part of it, did not exist in fact, or that the administrator, in allowing it, acted fraudulently or corruptly, and when a claim is thus attacked the burden of establishing its invalidity rests with the one who asserts that fact. Such person must, *in the first instance,* give proof sufficient to overthrow the action of the administrator."

In *Matter of Nelson* (63 Misc. 627, 629) the court says: " The law stated in the *Warrin* case has long been recognized and grows out of the principle that, when a claim has once been liquidated or established, it is not necessary for the claimant to establish such claim *a second time,* unless mistake, fraud or bad faith is shown in the first liquidation of the claim."

The objector cannot proceed upon surmise that the executor did not have justifiable grounds for allowing and paying the claim, and force the executor to produce the witnesses that might have been produced by the claimant in case the executor had rejected the claim. An allegation in objections that a claim was allowed and paid through fraud or negligence is no proof. The burden rests upon the objector to prove it.

In *Matter of Myers* (36 App. Div. 625) the court said that the executor was not bound to prove by evidence that would sustain a verdict against him, if he had disputed the claim, that the claim was due and payable.

See, also, *Lambert* v. *Craft* (98 N. Y. 342, 349) and *Matter of Dorland* (100 Misc. 236, 237), where the court says: " The claim had already been established and could only be defeated by proof that its allowance was fraudulent or negligent. (Code Civ. Pro. § 2680.) Upon that issue, the burden of proof was upon the contestants."

A considerable volume of testimony was introduced by the contestants, largely fragmentary and indefinite, much of it only material on the theory that it was the foundation for proof on the main issue. However, no superstruction was erected on the foundation. One of the principal witnesses for the contestants was a barber by trade, the father of one of the contestants, a relative of the other contestant, and the brother-in-law of another legatee, who admitted he went to different places searching for witnesses and very plainly and loquaciously evinced his interest in the case.

There was some testimony as to what a few persons had received for taking care of others or what they heard others had received

Surrogate's Court, Schoharie County, June, 1926.        [Vol. 127

in a few isolated cases, but the probative value was negligible in the absence of proof of the condition of the testatrix during the three years covered by the claim, notwithstanding that a few witnesses testified they had casually seen Mrs. Wilson sitting in front of the house a few times as they passed by, or had seen her for a few moments on infrequent calls at the house.

However, while from the evidence it could be fairly concluded that Mrs. Wilson was a lady of culture and refinement, accustomed to refined surroundings, interested in her church, the painter of some pictures and during her lifetime generous to her relatives, there was nothing in the evidence of the contestants' witnesses which showed the actual condition of Mrs. Wilson, or her state of health, what her ailments were, what food she demanded or required, whether she had separate apartments, whether her meals were served in her room or with the family, what care was given her night or day, what waiting on or attention she required when in fair health, or what nursing she required when ill; in fact, from all that appears in the evidence, she may have required the most exacting care and attention.

The question as to what is a reasonable value for services in taking care of, nursing, boarding and lodging a person, depends upon many elements, whether constant watching and attention is needed, expected or demanded, the health of the person, the question whether attention is needed not only in day time, but at night, as well as the disposition or peculiarities of the person who is being taken care of, and what care and attention she demanded, whether it was actually necessary or not. In addition to this, there is the element of the station in life of the person being taken care of, and the abilities, qualities and accomplishments which he or she would demand in any person who is to serve her and be paid by her out of her property.

Where a person of means has chosen as her companion or servant or landlady or nurse, or perhaps a person constituting a combination of all four of the above capacities, before a legatee whose legacy has been reduced by care given the testator, can come forward and overthrow a claim that has been allowed by the executor, he must prove fraud or negligence. It will not suffice to say that he, or some one else knows some isolated case where a person has been taken care of for less money, without regard to all the attending circumstances. It will not suffice for the eager expectant residuary legatees, grudging the use of the testator's own property for her own comfort, to lay down their own iron-clad rule of economy which they would have imposed, so that a larger residuary fund would be saved for the legatees.

It is argued that the services rendered by the claimant were gratuitous because the testatrix gave some property to the claimant's children, but that certainly does not furnish proof that the testator did not intend or had not agreed to pay the claimant or that the claimant did not expect to be paid, or that she was not entitled to be paid. Without discussing the testimony at any further length, it is sufficient to say that there is an entire absence of evidence of any fraud or negligence in the allowance and payment of the Lulu Nichols claim for $2,800.

The contestant's answers contain an objection that the executor should be charged with the sum of $100 in cash, alleged by contestants to have been in a bureau drawer. The inventory does not include the item of $100 referred to. The inventory was taken after due notice as directed by statute.

The inventory is *prima facie* correct and the burden of showing the contrary rests upon the contestant. (*Matter of Van Sise*, 38 Misc. 155; *Matter of Rogers*, 153 N. Y. 316, 328; *Matter of Mullon*, 145 id. 98.)

An executor cannot be charged with property simply upon surmise or evidence so vague as to put the court to a mere guess. The burden of establishing more assets than was acknowledged in the inventory and account is on the party objecting and must be proved with reasonable certainty. (*Matter of Everts* [also entitled *Matter of Stevenson*], 86 Hun, 325; *Marre* v. *Ginochio*, 2 Bradf. 165.)

As to the conversation with regard to this alleged $100, the language of the court in *Marre* v. *Ginochi* may be pertinent: " Evidence of conversations and admissions should at all times be received with great caution if not suspicion." And this is especially true when testimony of witnesses who have shown great bias and interest is offered in favor of the party upon whom the burden of proof rests.

As to the objection that there is a small amount of furniture to be accounted for, the court does not find any foundation for such claim and the objections are dismissed as to the furniture.

As to a few paintings, the court is of the opinion that the executor should be put to his proof on that question as a part of his case.

As has been stated hereinabove, all objections in both answers have been withdrawn except objections Nos. 2, 3, 4, 5, 6 and 7.

For the reasons hereinbefore stated, objections Nos. 2, 3, 4, 5 and 6, should be dismissed, except as to the sum of $340, claimed to be paid for interest on the $2,800 claim of Lulu Nichols, and objection No. 7 should be dismissed except as to the oil paintings.